UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

**CASE NO: 23-CR-60116-AHS**

UNITED STATES OF AMERICA,

        Plaintiff,

v.

WILL CATIS, SR.,

        Defendant.

_____/

### **DEFENDANT WILL CATIS, SR.'S AMENDED MOTION FOR VARIANCE**

COMES NOW, Defendant, WILL CATIS, SR. (hereinafter, "CATIS") by and through undersigned counsel, and respectfully requests this Honorable Court, pursuant to the Application Notes for *18 U.S.C. § 554,* § 5K2.0 & §5H1.4 of the Federal Sentencing Guidelines, and Title 18 U.S.C. § 3553(a) grant this motion for variance from the sentencing guidelines and states the following in support:

### **STATEMENT OF RELEVANT FACTS**

1. The government has charged CATIS as follows:

   a. Count one: Conspiracy to Possession with Intent to Distribute Protonitazene, in violation of 21 U.S.C. § 846; and

   b. Count two: Attempted Possession with Intent to Distribute of Protonitazene, in violation of 21 U.S.C. § 846.

2. The evidence will show that CATIS cooperated fully upon being arrested.

3. CATIS did not impede justice in any way.

4. CATIS timely accepted guilt and did not require the government to go to trial.

5. On August 18, 2023, CATIS met with AUSA Monique Botero and multiple agents and task force agents and was fully debriefed.

6. During the debriefing, and subsequent evidence found on CATIS phone, CATIS cooperation was a key tool in the government's "eight indictments in the Middle and Southern Districts of Florida charging China-based companies and their employees with crimes relating to fentanyl and methamphetamine production, distribution of synthetic opioids, and sales resulting from precursor chemicals." Press release attached hereto as Exhibit "A."

7. Because of the debriefing the government was, according to them, obtain evidence "…found to contain videos reflecting a kilogram press, firearms, and large sums of U.S. currency. Additionally, there were screenshots and photos reflecting Catis' drug trafficking, ***including chats with Chinese chemical company sales representatives***, bags filled with a powdery substance that were similar to the seized protonitazene, and screenshots of advertisements from Chinese chemical companies selling protonitazene" (Emphasis added).

   a. Further, pursuant to § 5K2.0 & §5H1.4 of the Federal Sentencing Guidelines, and Title 18 U.S.C. § 3553(a) a downward departure is warranted. This motion follows:

## LEGAL ARGUMENT

According to the primer on departures and variances, a defendant's assistance to authorities in the investigation of criminal activities has long been recognized and practiced by statute as a mitigating sentencing factor. Departure from the guidelines are warranted if the government files a motion that the defendant provided substantial assistance in the investigation and prosecution of

another person who has committed an offense, the amount of the reduction shall be determined by the court, for reason stated that may include, but not limited to, consideration of the following:

1. The court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration, the government's evaluation of the assistance rendered. CATIS helped the government obtain eight (8) additional indictments.

2. The truthfulness, completeness, and reliability of any information or testimony provided by the defendant, CATIS was clearly found to be reliable as evidenced by the government filing a 5.k.1 Motion.

3. The nature and extent of the defendant's assistance; for any injury suffered, or any danger or risk or of injury to the defendant or his family, resulting from his assistance; CATIS has put himself in harm's way by offering testimony.

4. The timeliness of the defendant's assistance. CATIS cooperated immediately and did not take the case to trial.

## **BOOKER**

Moreover, pursuant to *United States vs. Booker*, 343 U.S. 220 (2005), the federal sentencing process has adopted a three-step approach. First, the Court is to resolve any disputed guideline issues and determine the advisory guideline range. Second, the Court is to consider if there are any factors that may warrant a departure from the advisory guideline range. Lastly, the Court is to consider all the sentencing factors of Title 18 U.S.C. § 3553(a) and impose a sentence which is "reasonable" and not greater than necessary to achieve the sentencing objectives as set forth in Title 18 U.S.C. § 3553(a).

## **TITLE 18 U.S.C. § 3553(a) FACTORS**

The sentence suggested in CATIS's case *sub judice* is plainly "unreasonable" under *Booker* and a proper consideration of the applicable § 3553(a) factors, especially: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for the sentence imposed: to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with needed educational [and] correctional treatment; and (3) the kinds of sentences available:

*The nature and circumstances of the offense*. The Court has been versed on the nature and circumstances of the offense. However, even the simplest interpretation is that CATIS was selling drugs. There is no evidence they were being used in any violent crime or further illegal activity. The crime is the sale of a Scheduled drug online and nothing more.

*The kinds of sentences available.*

It is imperative for the court to recognize that CATIS pled guilty to Count 1 on the premise that the count would recognize his acceptance of responsibility. The offense conduct increase dramatically augments the possible sentence of this guilty plea and does so only in a means to excessively punish CATIS. CATIS has been and is ready, willing, and able to cooperate with the government from the moment he was arrested.

Notwithstanding the advisory guideline range, "The Court shall impose a sentence sufficient but not greater than necessary" to comply with the factors set forth in Title 18 U.S.C. § 3553(a). *Contra*, *United States vs. Booker*, 543 U.S. 220 (2005), *Gall vs. United States*, 128 S.Ct. 586 (2007), and *Kimbrough vs. United States*, 128 S.Ct. 558 (2007). The court, in *Nelson vs. United States*, 129 S.Ct. 890 (2009), cited to *Rita vs. United States*, 551 U.S. 338 (2007) that "The

Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable."

Furthermore, a review of the sentencing factors which the court must consider pursuant to 18 U.S.C. § 3553(a) strongly suggests that the defendant should not be sentenced to incarceration in federal prison.

## §5H1.4. Physical Condition, Including Drug or Alcohol Dependence or Abuse; Gambling Addiction (Policy Statement)

Physical condition or appearance, including physique, may be relevant in determining whether a departure is warranted, if the condition or appearance, individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines. An extraordinary physical impairment may be a reason to depart downward; e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment. CATIS is a victim of both a stabbing and a shooting. He also has a long history of drug and alcohol use.

The proposed Guidelines sentence computation substantially overstates the seriousness of the crime. This crime did not consist of any violent acts, and nobody was injured by violence. CATIS's sentence should be less than the Guidelines recommendation. CATIS has, by pleading to the Indictment, and will at the time of sentencing, provide extraordinary acceptance of responsibility; and, CATIS has family ties and obligations.

CATIS respectfully requests a hearing at sentencing and an opportunity to present evidence and oral arguments in support of the said motion for a variance from the Guidelines sentencing computation.

## CONCLUSION

Wherefore, based on the foregoing reasons, WILL CATIS, SR. respectfully requests that the Court grant this Motion for variance and the relief requested herein and any and all relief this Honorable Court deems necessary and just.

## CERTIFICATE OF SERVICE

I hereby certify that on **April 12, 2024**, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

> s/ Michael D. Weinstein……………….
> MICHAEL D.WEINSTEIN



PRESS RELEASE

# Justice Department Announces Eight Indictments Against China-Based Chemical Manufacturing Companies and Employees

Tuesday, October 3, 2023

For Immediate Release

U.S. Attorney's Office, Southern District of Florida

MIAMI – The Justice Department today announced the unsealing of eight indictments in the Middle and Southern Districts of Florida charging China-based companies and their employees with crimes relating to fentanyl and methamphetamine production, distribution of synthetic opioids, and sales resulting from precursor chemicals.

The indictments build on prosecutions announced in June 2023 and mark the second set of prosecutions to charge China-based chemical manufacturing companies and nationals of the People's Republic of China (PRC) for trafficking fentanyl precursor chemicals into the United States.

The indictments complement actions taken today by the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) to designate 28 individuals and entities involved with the international proliferation of illicit drugs.

"We know that the global fentanyl supply chain, which ends with the deaths of Americans, often starts with chemical companies in China," said Attorney General Merrick B. Garland. "The United

States government is focused on breaking apart every link in that chain, getting fentanyl out of our communities, and bringing those who put it there to justice."

"The international dimension to the deadly scourge of fentanyl requires the all-of-government response that we are delivering today," said Secretary of Homeland Security Alejandro Mayorkas. "Through the dedication and investigative abilities of Agents and Officers from HSI, CBP, and our federal partners, we are bringing accountability to ruthless organizations and individuals resident in the People's Republic of China and to the cartel members that seek to profit from the death and destruction that fentanyl causes."

"The charges announced today are another down payment on the Justice Department's pledge to every American family that has lost a loved one to fentanyl poisoning," said Deputy Attorney General Lisa O. Monaco. "Just as we did in the fight against terrorists and cybercriminals, we are deploying a whole-of-government approach – sharing intelligence, combining resources, and relentlessly pursuing justice – to attack the global supply chain fueling the fentanyl crisis. We will not rest until we have rid our communities of this poison."

"Fentanyl is the deadliest drug threat our nation has ever faced. These eight cases are the result of DEA's efforts to attack the fentanyl supply chain where it starts — in China. Chinese chemical companies are fueling the fentanyl crisis in the United States by sending fentanyl precursors, fentanyl analogues, xylazine, and nitazenes into our country and into Mexico. These chemicals are used to make fentanyl and make it especially deadly," said DEA Administrator Anne Milgram. "DEA will not stop until we defeat this threat. We are grateful to our law enforcement partners whose collaboration and dedication have made these actions possible. I am also deeply grateful for the incredible work by the DEA Miami Field Division. Their pursuit of these organizations demonstrates the drive and determination of the men and women, who are working as One DEA, to defeat the cartels and their entire global supply chain."

"This investigation of a narcotics trafficker utilizing counterfeit postage labels highlights the unique jurisdiction of the Postal Inspection Service," said Chief Postal Inspector Gary R. Barksdale of the U.S. Postal Inspection Service. "This indictment is a win in our battle against counterfeit postage and those seeking to use the nation's mail system to distribute dangerous substances."

The Drug Enforcement Administration (DEA) led the investigations brought in both districts and used its unique authority to specially schedule protonitazene and metonitazene as Schedule I controlled substances, which was necessary as their adverse health effects, including death, pose an imminent threat to public safety. As a result of that order, the regulatory controls and administrative, civil, and criminal sanctions applicable to Schedule I controlled substances can be imposed on persons who handle or propose to handle these substances. In addition, Homeland Security Investigations (HSI) and U.S. Customs and Border Protection (CBP) seized more than 1,000 kilograms of fentanyl-related precursor chemicals, and the U.S. Postal

Inspection Service also traced packages containing the precursor chemicals mailed through the U.S. mail and analyzed their contents after seizure.

Fentanyl is the deadliest drug threat facing the United States. Not only is fentanyl 50 times more potent than heroin and 100 times more potent than morphine, a dose of as little as two milligrams can kill a grown adult. Fentanyl analogues are similar in chemical structure and effects as fentanyl. Fentanyl is the leading cause of death for Americans ages 18 to 49. From February 2022 to January 2023, at least 105,263 Americans died of drug overdoses, the majority of which involved synthetic opioids such as fentanyl and fentanyl analogues.

Protonitazene and metonitazene are synthetic opioids that were emergency listed as Schedule I controlled substances in April 2022. There are no approved medical uses for protonitazene and metonitazene in the United States, or anywhere else in the world. Drug traffickers typically mix protonitazene and metonitazene with other opioids, such as fentanyl, to create new and more powerful cocktails of dangerous opioids. Methamphetamine overdose deaths are also surging in the United States. Methamphetamine is becoming more deadly because it is more frequently being mixed with highly potent fentanyl. There are currently no FDA-approved medications for treating methamphetamine use disorder or reversing overdoses. Drug overdose deaths involving psychostimulants, primarily methamphetamine, rose from 547 deaths in 1999 to 32,537 deaths in 2021.

The manufacture of fentanyl and methamphetamine begins with raw chemicals, known as precursors. Fentanyl and methamphetamine precursors, opioid additives, and synthetic opioids are manufactured and distributed by China-based chemical companies, many of which openly advertise on the internet. These China-based manufacturers ship fentanyl and methamphetamine precursors, opioid additives, and synthetic opioids around the world, including to the United States and Mexico, where drug cartels and traffickers combine the chemicals and then distribute fentanyl and methamphetamines throughout the United States to individual users.

These China-based chemical companies often attempt to evade law enforcement by using re-shippers in the United States, false return labels, false invoices, fraudulent postage, and packaging that conceals the true contents of the parcels and the identity of the distributors. In addition, these companies tend to use cryptocurrency transactions to conceal their identities and the location and movement of their funds.

The primary distributors of fentanyl and fentanyl analogues in North America are the Sinaloa Cartel based in Sinaloa, Mexico, and the Cartel Jalisco Nueva Generación based in Jalisco, Mexico. These two transnational criminal organizations have significant presences throughout Mexico, maintain distribution hubs in various cities across the United States, and control smuggling corridors into the United States.

Organizations such as the Sinaloa Cartel and Cartel Jalisco Nueva Generación receive fentanyl precursors from China that are then synthesized within clandestine laboratories into finished fentanyl at scale. China-based precursor chemical manufacturers ship precursors from mainland China by, among other methods, mislabeling the products being shipped and using containers and other packaging to mask their illicit contents.

**Southern District of Florida**

Three indictments were unsealed in the Southern District of Florida charging three Chinese companies and four officers and employees with fentanyl trafficking, synthetic opioid trafficking, precursor chemical importation, defrauding the U.S. Postal Service, and making and using counterfeit postage.

"Targeting those who fuel the opioid epidemic, regardless of who they are and where they are operating from, is one of our district's top priorities," said U.S. Attorney Markenzy Lapointe for the Southern District of Florida. "Today, we announced charges against the Chinese companies and employees that manufacture and introduce the raw chemicals at the start of the fentanyl and methamphetamine supply chain. This is only the beginning of our fight. The precursors and synthetic opioids that are being marketed, sold, and shipped to the United States and Mexico are being mixed and re-distributed into our local communities as powerful and potentially deadly cocktails of controlled substances. We commend our partner agencies for their skill and resourcefulness, as we work collectively to prosecute the sources of the poison and protect the public."

Hanhong Medicine Technology Company, a pharmaceutical company located in Wuhan, Hubei Province, China, was charged in a four-count indictment, along with Chinese nationals Changgen Du, 30, and Xuebi Gan, 28. According to the indictment, Hanhong has exported large quantities of fentanyl precursors and non-opioid additives, like xylazine, to the United States and Mexico, including to a drug trafficker in Pennsylvania and to a drug trafficker in the Sinaloa cartel for the manufacture of fentanyl in Mexico for eventual distribution in the United States. Xylazine is often mixed with fentanyl to increase the effects of the drug for users. Xylazine is a non-opioid drug approved for veterinary use for purposes of sedation, anesthesia, muscle relaxation, and pain relief in horses, cattle, and other animals. It is not approved for human use. Many opioid users are unaware they are taking xylazine. Overdose deaths involving xylazine have steadily increased year over year. Drug users who inject xylazine, or drug mixtures containing xylazine, often develop necrotic tissue resulting in disfiguring wounds or amputation.

The Du Transnational Criminal Organization is listed on the United States Attorney General's Consolidated Priority Organization Target (CPOT) list. The CPOT list identifies the most significant transnational criminal organizations presenting a priority threat to the United States, including those international drug and money laundering organizations affecting the illicit drug supply of the United States. The CPOT list identifies those criminal organizations by the name(s)

of their leaders. Du, as the criminal organization's leader, is the director of Hanhong and allegedly negotiates sales with customers. Gan is an alleged sales representative. Du and Gan each operated a crypocurrency wallet that accepted payment for Hanhong's sales. The four-count indictment charges Hanhong, Du, and Gan with conspiracy to manufacture and distribute fentanyl; conspiracy to manufacture and distribute a fentanyl precursor with intent to unlawfully import it into the U.S.; manufacturing and distributing a fentanyl precursor with intent to unlawfully import it into the U.S.; and conspiracy to commit money laundering.

Jiangsu Bangdeya New Material Technology Company, a pharmaceutical company located in Jiangsu, China, was charged in an eight-count indictment, along with Jiantong Wang, 40, a Chinese national and alleged owner and operator of Bangdeya. The indictment alleges that Bangdeya advertises openly online as an export company for chemicals, including synthetic opioids protonitazene and metonitazene. The introduction of these synthetic opioids into the illicit drug market threatens to exacerbate the overdose problem in the United States. Drug traffickers typically mix protonitazene and metonitazene with other opioids, such as fentanyl, to create new and more powerful cocktails of dangerous opioids. Bengdeya has imported large quantities of these synthetic opioids into the U.S., including to a drug trafficker in the Southern District of Florida.

Bangdeya and Wang were charged with conspiracy to import protonitazene and metonitazene; conspiracy to distribute protonitazene and metonitazene; multiple counts of distribution of protonitazene; conspiracy to defraud the United States and make and use forged and counterfeited postage; and making and printing unauthorized postage meter stamps.

Hubei Guanlang Biotechnology Company, a chemical company located in Shijaizhuang, Hebei Province, China, was charged in a two-count indictment, along with Chinese national Wei Zhang, 28, who allegedly runs the day-to-day operations of the company and operates a cryptocurrency wallet that accepts payment for the company's sales of fentanyl precursors and opioid additives.

According to the indictment, Guanlang openly advertises online and sells an array of chemicals, including methamphetamine precursors like methylamine HCL, to customers in the United States and Mexico. Methylamine HCL is an essential precursor chemical that Mexican cartels use to manufacture highly pure and potent  methamphetamine. Currently, most of the methamphetamine supply in the United States is produced by drug trafficking cartels in Mexico.

Guanlang and Zhang are charged with conspiracy to manufacture and distribute a methamphetamine precursor and unlawfully import into the U.S. and conspiracy to unlawfully import a methamphetamine precursor into the U.S. with the intent to manufacture methamphetamine; and the manufacture and distribution of a methamphetamine precursor that was unlawfully imported into the United States.

The DEA Miami Field Division, HSI Miami, USPIS-Miami, IRS-CI Miami, and FBI Miami Field Office investigated these cases.

Assistant U.S. Attorney Monique Botero and Jon Juenger for the Southern District of Florida are prosecuting the cases. Assistant U.S. Attorney Michell Hyman for the Southern District of Florida is handling asset forfeiture.

The indictments are a result of Organized Crime Drug Enforcement Task Forces (OCDETF) investigations. The OCDETF mission is to identify, disrupt, and dismantle the highest-level criminal organizations that threaten the United States, using a prosecutor-led, intelligence-driven, multi-agency task force approach. OCDETF synchronizes and incentivizes prosecutors and agents to lead smart, creative investigations targeting the command-and-control networks of organized criminal groups and the illicit financiers that support them. Additional information about the OCDETF Program may be found at www.justice.gov/OCDETF.

Members of the South Florida High Intensity Drug Trafficking Area (HIDTA) Task Force carried out this case and prosecution. HIDTA was established in 1990. This program, which is made up of federal, state, and local law enforcement agencies, fosters intra-agency cooperation among law enforcement agencies in South Florida and involves them in developing a strategy to target the region's drug-related and violent crime threats to public safety, as with the opioid epidemic, fentanyl, and the cocaine threat to our nation. The South Florida HIDTA uses the funding provided by the Office of National Drug Control Policy, out of the Executive Office of the President of the United States, that sponsors a variety of law enforcement initiatives that target the region's illicit drug and violent crime threats to our community.

**Middle District of Florida**

Five indictments were unsealed in the Middle District of Florida charging five Chinese corporations and eight Chinese nationals with the illegal importation of fentanyl and fentanyl-related chemicals into the United States.

According to the indictments, the defendants openly advertised their ability to thwart U.S. customs and deliver the chemicals used to make fentanyl to the Middle District of Florida and elsewhere in the United States. The defendants used fake shipping labels and special delivery procedures to ensure the illicit chemicals went undetected. The defendants played various roles, such as coordinators and suppliers, and eight defendants are also charged with international money laundering. According to the indictments, the Chinese companies demonstrated past success delivering a stable supply of product to clients in Mexico for years.

"The protection of our country from the deadly scourge of fentanyl is a key priority of the Department of Justice and my office," said U.S. Attorney Roger B. Handberg for the Middle District of Florida. "We will continue to pursue cases against Chinese chemical companies who are knowingly manufacturing and exporting fentanyl precursors to profit on the pain and

suffering of people in the United States. We thank our partners at the Drug Enforcement Administration for their tireless efforts in support of these prosecutions."

Hebei Shenghao Import and Export Company, based in Shijiazhuang, Hebei Province, China, is charged with fentanyl trafficking conspiracy, along with Chinese nationals Qingshun Li, 29, who allegedly negotiates the sale of precursor chemicals and maintains a bank account for the receipt of payments; Qingsong Li, 32; and Chunhui Chen, 33, both of whom allegedly maintain cryptocurrency wallets for the remittance of payments of precursor chemicals; Chunzhou Chen, 30, who allegedly received Western Union payments on behalf of Hebei Shenghao.

Lihe Pharmaceutical Technology Company, based in Wuhan, Hebei Province, China, was charged with fentanyl trafficking conspiracy and international money laundering, along with Chinese nationals Mingming Wang, 34, who is the alleged holder for three bitcoin accounts shared by sales agents for Lihe Pharmaceutical, and Xinqiang Lu, 40, the alleged recipient of funds via Western Union on the company's behalf.

Henan Ruijiu Biotechnology Company, based in Zhengzhou, Henan Province, China, was charged with attempted importation of fentanyl precursor and attempted international money laundering, along with Chinese national Yongle Gao, 30, who is the alleged registered owner of the bitcoin wallet associated with Henan Ruijiu.

Xiamen Wonderful Biotechnology Company, based in Xiamen, Fujian Province, China, was charged with attempted importation of fentanyl precursor and attempted international money laundering, along with Chinese national Guo Liang, 34, the alleged registered owner of the bitcoin wallet associated with Xiamen Wonderful.

Anhui Ruihan Technology Company, based in Hefei, Anhui Province, China, was charged with attempted importation of fentanyl precursor and attempted international money laundering.

DEA investigated these cases.

Assistant U.S. Attorney Daniel Baeza and Special Assistant U.S. Attorney Michael Leath for the Middle District of Florida are prosecuting the cases.

The U.S. Department of Treasury's Financial Crimes Enforcement Network (FinCEN) provided assistance with the indictments brought in both districts.

*An indictment is merely an allegation. All defendants are presumed innocent until proven guilty beyond a reasonable doubt in a court of law.*

Indictments are attached to this release.

Indictment-23cr335  Indictment-23CR338  Indictment-23CR334  Indictment-23CR336  Indictment-23CR333  CaseNo-23-20393-CR-ALT  CaseNo-23-20394-CR-ALT  CaseNo-23-60176-CR-SING

###

## Contact

Public Affairs Unit

U.S. Attorney's Office

Southern District of Florida

USAFLS.News@usdoj.gov

*Updated November 27, 2023*

## Topics

| DRUG TRAFFICKING | PRESCRIPTION DRUGS |

## Component

USAO - Florida, Southern

# Related Content

**PRESS RELEASE**

**Former City of Miami police officer pleads guilty to attempted cocaine trafficking and attempted Hobbs Act extortion charges**

On March 27, a former police officer with the City of Miami Police Department (MPD) pleaded guilty to attempted Hobbs Act extortion under color of official right and attempted possession...

March 29, 2024

PRESS RELEASE

## Four men sentenced for conspiracy to rob drug-traffickers

On March 22, four defendants were sentenced to federal prison following their convictions for conspiracy to rob drug-traffickers of their narcotics, money, and other property.

March 25, 2024

PRESS RELEASE

## Inmate at FCI Miami pleads guilty to possession with intent to distribute cocaine inside a federal prison

On March 21, an inmate serving a 60-month sentence at the Federal Correctional Institution (FCI) Miami pleaded guilty to possession of a controlled substance with intent to distribute.

March 22, 2024

## Southern District of Florida

Main Office:

99 N.E. 4th Street

Miami, Fl. 33132

Email USAO-SDFL

Telephone: (305) 961-9001
Fax Line: (305) 530-7679