```
 1                   UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2
                      Case No. 23-CR-60116-SINGHAL
 3

 4   UNITED STATES OF AMERICA,)
                              )
 5           Plaintiff,       )
                              )
 6        -v-                 )
                              )
 7   WILL CATIS, SR.,         )
                              )
 8           Defendant.       )   Fort Lauderdale, Florida
                              )   April 11, 2024
 9   _____ )   2:17 p.m.

10

11

12           TRANSCRIPT OF SENTENCING PROCEEDINGS

13         BEFORE THE HONORABLE RAAG SINGHAL

14               U.S. DISTRICT JUDGE

15

16   Appearances:

17

     For the Government:       MONIQUE BOTERO
18                             MITCHELL HYMAN
                               Assistant United States Attorneys
19                             11200 NW 20th Street, Suite 101
                               Miami, Florida  33172
20
     For the Defendant:        MICHAEL WEINSTEIN, ESQ.
21                             12 SE 7th Street, Suite 610
                               Fort Lauderdale, Florida  33301
22

23
     Reporter:                 Karl Shires, RMR, FCRR
24   (954) 769-5496            Official Court Reporter
                               299 East Broward Boulevard, # 203G
25                             Fort Lauderdale, Florida  33301
```

STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

1          (Call to Order of the Court.)

2          THE COURT:  Okay.  We are going to go on the record

3   then on United States of America versus Will Catis, Senior.

4   We're here for a sentencing hearing.

5          And let me begin with appearances, first for the

6   government.

7          MS. BOTERO:  Good afternoon, Your Honor.  Monique

8   Botero and Mitchell Hyman on behalf of United States.  And also

9   with us in the government's area is DEA Special Agent Michael

10  Glemy.

11          THE COURT:  Nice to see you all.

12          How about for the defense?

13          MR. WEINSTEIN:  Good afternoon, Judge.  Michael

14  Weinstein here with Mr. Catis.

15          THE COURT:  I know you said it before, but it's Catis

16  not Catis?

17          THE DEFENDANT:  Catis.

18          THE COURT:  Okay.  All right.  Nice to see you both.

19          Mr. Catis, we're here for a sentencing hearing.  And

20  what that means is that we're going to go over some documents,

21  and I'm going to have a lot of conversation with the lawyers

22  about what's a fair and appropriate sentence in this case.

23          You'll have an opportunity, if you want, and you don't

24  have to, to make a statement here in court at some point during

25  that hearing.

```
 1              But if there are things that you want Mr. Weinstein to
 2    bring up that he's not bringing up, you just have to tell him
 3    and he'll let me know.  I just need to make sure that there's
 4    no confusion or points that are missed from your perspective.
 5              Understood?
 6              THE DEFENDANT:  Yes, sir.  Yes, Your Honor.
 7              THE COURT:  Okay.  All right.  Then, Ms. Botero,
 8    Mr. Weinstein, let me tell what you I have up here in front of
 9    me.  And then, obviously, I have CM/ECF all set if I need to
10    call up anything that I'm missing.  But I do have the documents
11    that go back to the guilty plea, which, of course, are the
12    indictment, the plea agreement, and the factual proffer.
13              I have the preliminary order of forfeiture.  I have
14    the very well done presentence investigation report that
15    Ms. Hill prepared.  And she is present in court here today.
16              I have the defendant's motion for reduction of
17    sentence.  I'm sorry, motion for variance, which is docket
18    entry 42; the defendant's amended motion for variance at docket
19    entry 43, and then the one that just came in, the amended
20    motion at docket entry 44.  I have as well the government's
21    motion for reduction of sentence pursuant to 5K1.1.
22              Anything else, Ms. Botero, you think I should have?
23              MS. BOTERO:  No, Your Honor.  That is everything.
24              THE COURT:  Okay.  Great.
25              Mr. Weinstein, just wanting to make sure that I
```

1    reviewed everything you filed.

2         MR. WEINSTEIN:  You're perfect, Judge.  Thank you.

3         THE COURT:  Okay.  Great.  Thanks.

4         All right.  Then, Mr. Catis, the main document that we

5    all rely on is the Presentence Investigation Report.  This

6    document, included the addendum, is about 45 pages long.  It

7    basically gives me a background of you and of the case and how

8    the two things intersect.  This is what it looks like in terms

9    of the coversheet.

10         Did you have an opportunity to carefully review this

11   and discuss it with Mr. Weinstein?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  And did you speak with him about any

14   issues you had with it, basically talk with him about it so he

15   knew your feelings about this document?

16         THE DEFENDANT:  Yes, Your Honor.

17         THE COURT:  Do you need any more time to do that?

18         THE DEFENDANT:  No, Your Honor.

19         THE COURT:  Okay.  All right.  Then, Ms. Botero, do

20   you have any objections, any additions, deletions, or

21   corrections to the Presentence Investigation Report?

22         MS. BOTERO:  No, Your Honor.

23         THE COURT:  With regard to the calculations, those are

24   on pages 11 and 12, I'm showing a base offense level of 34,

25   total of four levels of increase under paragraphs 40 and 41 for

1  specific offense characteristics, adjusted offense level of 38,

2  three level decrease for Mr. Catis' acceptance of

3  responsibility, gives us an offense level of 35, criminal

4  history category of II.  This puts him in an advisory guideline

5  provisions range of 188 months to 235 months.

6          Are you in agreement with all of that?

7          MS. BOTERO:  Yes, Your Honor.  Those are the correct

8  guidelines calculations.

9          THE COURT:  Okay.  Thank you, Ms. Botero.

10          Mr. Weinstein, how about you?  Any objections,

11  additions, deletions, corrections to the Presentence

12  Investigation Report?

13          MR. WEINSTEIN:  No, Judge.

14          THE COURT:  And with regard to the calculations that

15  we just went over, are you in agreement with total offense

16  level 35, criminal history category II, and a range of 188 to

17  235 months in prison?

18          MR. WEINSTEIN:  Yes, Judge.

19          THE COURT:  Okay.  Mr. Catis, you understand where you

20  score under the Federal Sentencing Guidelines?

21          THE DEFENDANT:  Yes, Your Honor.

22          THE COURT:  Any questions about that range?

23          THE DEFENDANT:  No, Your Honor.

24          THE COURT:  Okay.  All right.  Then, Ms. Hill, we'll

25  adopt the Presentence Investigation Report as written without

1    change.

2            THE PROBATION OFFICER:  Okay.

3            THE COURT:  And, Ms. Botero, will go over to you for

4    your thoughts on what's a fair and appropriate sentence.

5            MS. BOTERO:  Thank you, Your Honor.

6            Your Honor, I'm going to start, actually, a little bit

7    backwards, which is at the 5K, because I want to put that in a

8    framework before we go through the 3553 factors for the final

9    sentence.

10           So, Your Honor, part of the reason that Mr. Weinstein

11   had three separate motions regarding his variance is because we

12   did not have an opportunity to speak to just confirm exactly

13   what the cooperation was so that there was no objection in

14   terms of the cooperation that the government was agreeing would

15   count as substantial assistance.

16           And so, to be clear, this investigation, which was

17   clearly laid out, as you said, very well by Ms. Hill in the

18   Presentence Investigation Report, did not start with Mr. Catis.

19   It started with the investigation of some Chinese chemical

20   companies that were sending precursor chemicals and synthetic

21   opioids to the United States.  And through analysis of

22   telephone communications of some of those sales

23   representatives, we came upon Mr. Catis.

24           The investigation then, of course, focused in on

25   Mr. Catis for his drug trafficking activities.  And when he was

1   arrested, he said he wanted to debrief with us.  At the time

2   that he was arrested, we had more than enough evidence to

3   charge the indictment that we believe Mr. Catis should be given

4   some substantial assistance credit for, which is Jiangsu

5   Bangdeya.  For purposes of the court reporter, that's

6   B-A-N-G-D-E-Y-A.  And that's Case Number 23-CR-20393-Altman.

7          In that case, Your Honor, we were able to identify

8   communications between the defendant and specific sales

9   representatives, as well as packages that came directly from

10  that chemical company to the defendant.

11         The defendant was not needed to be a witness.  We had

12  enough evidence to do it without him.  But what he gave us,

13  when we put together the prosecution memorandum, it was some

14  context and color and the potential of a live witness who could

15  explain exactly what he was getting and exactly what he was

16  doing to get this that was not just an undercover agent.  The

17  primary part of the investigation was an undercover operation

18  where we obtained the same drugs ourselves from these

19  companies.

20         Additionally, the defendant, not by name, but the

21  defendant was outlined in a speaking indictment in that same

22  case number that I explained basically identifying exactly what

23  I just said.  Through communications we identified a drug

24  trafficker in Broward County, and that drug trafficker was

25  obtaining protonitazene from this company and this company --

```
1    and he sold those drugs on the street of South Florida.

2              For those reasons, Your Honor, the fact that he was

3    used as kind of a witness for color, as I would say, to be able

4    to explain things and the fact that he was generally placed in

5    this indictment, we believe that a reduction of 15 percent from

6    the bottom of the guidelines is appropriate.  A 15 percent

7    reduction would take 28 months off of his 188-month, bottom of

8    his guideline, for a sentence of 160 months' imprisonment.

9    Your Honor, we believe that that 15 percent is appropriate and

10   not more for a variety of reasons.

11             Number one, the defendant was dealing kilos

12   potentially a week, and sometimes maybe more, of these

13   frankincense substances, that's the only thing I can call them,

14   that contained, you know, fentanyl and heroin and

15   fluorofentanyl and synthetic cathinones.  And when we debriefed

16   with him, he was never comfortable and would never provide us

17   any information on be his drug trafficking network in

18   South Florida.  And so his limited cooperation was really --

19   was only in that narrow area of that one indictment.

20             Additionally, as I mentioned before, the indictment

21   would have gone forward with or without Mr. Catis' cooperation.

22   But, at the same time, since he was willing to be a witness if

23   needed, although I don't anticipate we will ever get these

24   companies here from China, we believe that a 15 percent

25   reduction in sentence is appropriate.
```

1              So now, Your Honor, turning to the 3353 --

2          THE COURT:  Let me ask you a couple of questions.

3          MS. BOTERO:  Sure.

4          THE COURT:  And I know you're just at the beginning,

5  and I haven't heard from Mr. Weinstein yet.  But his paper

6  suggests that Mr. Catis made eight cases, and you're now really

7  kind of focusing in on one case.  So --

8          MS. BOTERO:  Which is why -- if you look at docket

9  entry 44, which is why -- and why you need to disregard the

10  previous ones, that's when I called Mr. Weinstein and I told

11  him that's factually incorrect.

12          THE COURT:  Okay.

13          MS. BOTERO:  It is factually incorrect that he

14  assisted in the Middle District of Florida on five cases, which

15  were five cases.  And it's factually incorrect that he assisted

16  on the two additional cases in the Southern District of

17  Florida.

18          So if you see, actually, in defense filing, which is

19  docket entry 44 -- I'm just going to refer to it by number

20  since they all have pretty much the title -- paragraph 6, that

21  has been changed to one indictment.

22          THE COURT:  I guess my difficulty in docket entry 44

23  is I couldn't just disregard 42 and 43 because 44 seems more to

24  be a supplement to 42, and I'll tell you why.  44 doesn't

25  address the 3553 factors, but 42 does.  So that's why I was

1  kind of looking at all of them collectively.  But your

2  suggestion is really disregard 43.

3          MS. BOTERO:  Basically, yes, Your Honor.  In terms

4  of -- at least in terms of the factual assertions that are

5  contained within --

6          THE COURT:  I understand.

7          MS. BOTERO:  -- in terms of legal argument.  But in

8  terms of the factual assertions, and that is part of the reason

9  that Mr. Weinstein, you know, obviously, very professionally,

10 filed this amended document, because of the fact that we needed

11 to clarify the factual issues.

12         And so the clarity on that -- there's two things I

13 just want to clarify and make very clear that were incorrect in

14 his earlier motions, one of which was the eight diamonds.  It

15 is not eight.  It is one.  And then second was, there was a

16 paragraph that mentioned the fact that based on the debrief, we

17 were able to identify a kilo press and some communications.

18 That actually came from a search warrant even before the

19 defendant was arrested.  It was a search warrant of his email

20 cloud account, and we were able to get all that information

21 from then.  It did not come from the debrief, and it did not

22 come from his assistance.

23         So his assistance really was limited to saying, okay,

24 here are communications that we have.  We understand you

25 communicated with them.  Tell us about them.  Tell us how you

1    did it.  How did you go online?  How did you pay them?  How did

2    you get your cryptocurrency?  Again, as ways to give color to

3    the evidence that we already had.

4           THE COURT:  All right.  I appreciate that.  And before

5    you continue on, I will just say, Mr. Weinstein, I appreciate

6    docket entry 44 that corrects what was in previously because

7    there's plenty of lawyers that wouldn't have done that and that

8    would have just come in and said, oh, Judge, by the way, I have

9    a typo or something.  So thank you for that.

10          Okay.  Ms. Botero.

11          MS. BOTERO:  Your Honor said that you might have some

12   other questions.  Was that the only question?  So proceed

13   forward now?

14          THE COURT:  The only question for now.

15          MS. BOTERO:  Understood, Your Honor.

16          So, Your Honor, now that we have talked about what the

17   cooperation was, so we're at the place where the government

18   recommends a sentence, which again is 160 months' imprisonment,

19   I'd like to go through the 3553 factors as it relates to this

20   defendant.

21          First is the nature and circumstances of the offense.

22   As Your Honor is aware from reading the PSI and from the

23   factual proffer in this case, the defendant was dealing in

24   significant quantities of very, very lethal drugs.  In this

25   case, at the time of his arrest, there were seizures that

1    totaled over 9 kilograms of very deadly substances.

2          One of the calculations that Ms. Hill made was

3    combining some of these mixtures and substances to what would

4    be the strongest or highest calculated substance within those

5    mixtures.  So based on that, and as is reflected in paragraph

6    39, she found that there was 7.3 kilograms of fentanyl.

7          Your Honor, a person can overdose on 2 milligrams of

8    fentanyl.  To have 7.3 grams of fentanyl is --

9          THE COURT:  Kilograms.

10         MS. BOTERO:  Kilograms.  That's what I'm saying.  To

11   have 7.3 kilograms of fentanyl would be mass murder around here

12   if it takes 2 milligrams to kill someone.

13         So in terms of the actual nature and circumstances of

14   the offense, in terms of what he was dealing on the streets of

15   South Florida and Broward County, it is significant, it is

16   serious, it is dangerous, and it is -- it was done solely for

17   the purpose of making money.

18         As Your Honor saw from the preliminary order of

19   forfeiture and again from the PSI, the defendant had hundreds

20   of thousands of dollars that he was secreting away from sales

21   of these narcotics.  He had no other real job other than

22   painting and was not really doing that on a regular basis.

23         And so based on the nature and circumstances of the

24   offense in terms of what he was dealing, this defendant

25   deserves a sentence of 160 months.

1        Second, let's talk about the history and

2   characteristics of this defendant.  As Your Honor was able to

3   see through passing through the Presentence Investigation, he

4   has had many, many, many contacts with law enforcement.  He was

5   only calculated to have two criminal history points.  And the

6   government believes that that severely underrepresents his

7   criminal history and criminal background and his criminal

8   activities.

9        He is not just a drug dealer, but he's also a violent

10  man.  And that's evidenced through the multiple domestic

11  violence situations which were laid out in detail in the

12  Presentence Investigation Report.  He's a convicted felon who

13  maintained a firearm even to this day, and firearms were

14  found -- well, not to this day, but to the day of his arrest.

15  And firearms were found during the search of his residence,

16  along with the drugs.

17       And honestly, Your Honor, because he agreed to plead

18  very early on, he received a break.  We could have charged him

19  with a 924(c).  He could have had a five-year consecutive

20  sentence.  We could have charged him with a 922(g), a

21  possession of a firearm by a convicted felon.  And we did not

22  do that.  So he was receiving benefits even just by his guilty

23  plea based on his criminal history and based on his background.

24       The sentence, Your Honor, has to represent the

25  seriousness of this offense.  And based on what he was doing in

1   the sense that he was contacting a company that is able to send

2   him synthetic opioids secretly to his home to be then used to

3   mix with his drugs to give his clients a better high, it is an

4   extremely serious offense that requires an extremely serious

5   sentence.

6          There are some components to what he was doing, too,

7   that show again that he has a violent nature to him.  When the

8   postal worker who did not give him his package, it's reflected

9   here that he approached the postal worker, it was actually a

10  very aggressive confrontation, which the defendant himself

11  filmed and we were able to see, because it was stored on his

12  cloud device.  And we saw the confrontation between himself and

13  the postal worker because he was not getting his package with

14  protonitazene.

15         Additionally, a sentence must promote respect for the

16  law and provide just punishment for the offense.  Your Honor,

17  the defendant has been through this system, as I said, and many

18  contacts with the law many times.  And he now has reached the

19  pinnacle of illicit drug dealing and violation of the law, and

20  this sentence that you give today must reflect that.

21         It also has to afford adequate deterrence specifically

22  to this defendant for criminal conduct.  Again, Your Honor, it

23  does not seem through the different courses of his life, the

24  sentences that were provided to him, the different ways that

25  the court system tried to redirect Mr. Catis in such a way that

1    he could be a productive member of society, it doesn't seem

2    that any of that has worked.  And at some point there has to be

3    deterrence for the fact that we need to be protecting our

4    streets and we need to have deterrence that this defendant will

5    not do this again.  And that rolls into to protect the public

6    from further crimes of the defendant.

7              Again, Your Honor, I'm going to circle right back

8    around to what these drugs were and how lethal they were.  It's

9    incalculable and unknown whether the drugs that the defendant

10   had actually distributed led to someone actually overdosing or

11   pressing a pill.  We don't know that.  We have no evidence.

12   And I'm not arguing that they did.  What I'm arguing is that he

13   didn't know and he didn't care.  He would put this out on the

14   street without regard for the safety of the individuals,

15   without regard to the safety of the humans who would be

16   ingesting it, and he did it all for the purposes of making

17   money.  And, Your Honor, a sentence has to reflect the fact

18   that the public also needs to be protected from this type of

19   behavior in the future.

20             So for all of those reasons, Your Honor, we believe

21   that 160 months is absolutely the appropriate sentence as it

22   pertains to this defendant for the crimes charged herein.

23             THE COURT:  Ms. Botero, thank you.  Before I go to

24   Mr. Weinstein, let me ask you just a couple questions.

25             So, you know, Mr. Weinstein tries a lot of cases, and

1   so he's trying to figure out and advise his client as best as

2   he can in terms of trial versus guilty plea.

3          And would it be a fair statement that if Mr. Catis

4   said, you know, forget it, I'm going to go to trial, then

5   instead of offense level 35, he's looking at 38, because he

6   doesn't get the three points off, assuming that there was

7   nothing else charged.  That would then put him in a 262 to

8   327 range.

9          MS. BOTERO:  Uh-huh.

10          THE COURT:  And then based on your argument here,

11   assuming the statutory provision was zero to 20 years, you

12   would have sought an upward variance?

13          MS. BOTERO:  No, Your Honor.  I would have -- well,

14   it's 262.  240 is 20 years.

15          THE COURT:  Correct.

16          MS. BOTERO:  So I would have argued that -- and he

17   would have received no cooperation credits, so he wouldn't have

18   received that 15 percent either.  I would have argued that

19   probably somewhere in the neighborhood of -- it would be -- I

20   would argue like 18.  Because I think the cooperation credit is

21   the only thing -- and that's 28 months.  So that's the only

22   thing to me that's substantially different.

23          I think based on these facts the appropriate sentence

24   for this defendant is 15 years --

25          THE COURT:  Okay.

1      MS. BOTERO:  -- after a 5K.  I think an appropriate

2  sentence for this defendant without the 5K is in the

3  neighborhood of 18 years.

4      I do not believe, me personally, I can't speak for the

5  rest of my colleagues, I do not believe in truly a penalty, if

6  you will, for a trial, as some people would call it.  I believe

7  in looking holistically at what the facts and circumstances of

8  the case are and determining what is the appropriate sentence

9  based on all of the 3553 factors.

10      THE COURT:  Okay.  And then separate from that,

11  another benefit that Mr. Weinstein was able to get for his

12  client is that there's, as you mentioned, no 924(c) or 922(g)

13  charge, which would then be a consecutive five or seven years.

14      MS. BOTERO:  Yes, Your Honor.  And what I will say --

15  I think that what's important to answer your question is, your

16  previous question is not actually really how I would have

17  handled it.  Because if the defendant had chosen to go to

18  trial, I would have superseded.  I would have not only charged

19  him with the 924(c) that would have had the five-year

20  consecutive and the 922(g), because he was a felon in

21  possession, but I would have also charged him with possession

22  with intent to distribute heroin and fentanyl, which have a

23  maximum sentence of life, and then from there they would have a

24  ten-year minimum mandatory that was required as to each of

25  those because of the amounts that they were.

1    So, now, in answering your question there, Your Honor,

2  if those were my counts and -- because you asked if it was just

3  on the previous one.  If those are my counts, I'd be arguing

4  for 25 years.

5    THE COURT:  Okay.  So, without a doubt, Mr. Weinstein

6  has secured substantial benefits for his client.

7    MS. BOTERO:  Without a doubt, Your Honor.

8    THE COURT:  Okay.  All right.  Thank you, Ms. Botero.

9    Mr. Weinstein.

10    MR. WEINSTEIN:  Good afternoon, Judge.

11    Do you want to hear my client?  I also have one family

12  members who's going speak.  So what order would you like it in?

13    THE COURT:  The order is completely up to you.  And

14  you can do it a few ways.  You can present a little bit.  You

15  can call witnesses and then you can present a little more.  Or

16  whatever you think is the best presentation from your side.

17    MR. WEINSTEIN:  Here's what I would like to do.  I

18  would like to call the family member who wishes to speak, call

19  Mr. Catis, and then wrap it up.

20    THE COURT:  Okay.

21    MR. WEINSTEIN:  All right.

22    THE COURT:  That sounds fine.

23    MR. WEINSTEIN:  I'm going to call Ms. Eubanks (sic).

24    MS. BANKS:  Hello.

25    THE COURT:  Hi.

1          MS. BANKS:  Hi.

2          THE COURT:  I just need your name.  And then Karl's

3  going to take everything down, so don't talk too fast.  Okay?

4          MS. BANKS:  Okay.  My name is Kathnica Banks.

5          THE COURT:  Hi.

6          MS. BANKS:  Hi.  I just wanted to speak on just

7  stating that I do understand the severity of the charges.  I do

8  want to let you know that as well.  But I also wanted to speak

9  on the kind of man that my uncle is.

10          He is a great loving, caring man.  He's the man that

11  when it comes to family events and occasions, he's the one

12  making sure we all come together as a family.

13          If I do choke up, I'm sorry.  It's not for you to feel

14  sorry for me.  I just -- you know, it's just the situation

15  going on right now.

16          But I do want you to know that he is a strong man.  He

17  is loving.  He is caring.  He's considerate.  I look up to him.

18  I have little nephews and cousins that looks up to him.  When

19  it comes to family events, all the things that a parent tell us

20  today, we don't even see this man.  We see a man that goes to

21  work, who owns his own business, you know, who take cares of

22  the family, make sure we all come together, hangs out, making

23  sure we are have a good time, you know, showing love, and being

24  considerate and all.  He has a family that stands behind him a

25  hundred percent.  We're all here to support him as you can see.

```
 1    If the kids could be here, it would probably be much a fuller
 2    house, you know.
 3              THE COURT:  It's pretty full.
 4              MS. BANKS:  Exactly.  And I just want to kind of be up
 5    here just to speak on -- like I said, just to tell you that the
 6    man that you guys are looking for is not the man we see at
 7    home.  This is the man, like I said, I look up to and other
 8    family members look up to.
 9              And I just want to let you know that he do have family
10    behind hmm here, you know, for the decisions you make as far as
11    him being incarcerated or coming home to us.
12              He do have a younger -- younger kids that, you know,
13    like I said, that we do have to be mindful, that will grow up
14    without a father, you know.
15              Like I said, I'm 30 years old today.  So as a kid
16    growing up, I looked up to him as a father because I didn't
17    have a father, you know.  And then I have little girls,
18    daughters as well, and nieces and everyone that looks up to him
19    as a father figure because he's the only man that's been in our
20    family, in our lives.
21              So that's all I kind of wanted to say today.  When you
22    come to making your decision, just do keep into consideration
23    you're taking a man away from his family that plays a vital
24    role in our family.
25              THE COURT:  Understood.  You did very well.  Thank you
```

1    for your time and for your support.

2              MS. BANKS:  Thank you, Your Honor.  Have a great day.

3              THE COURT:  Sure.

4              MR. WEINSTEIN:  Judge, how would you like Mr. Catis to

5    present himself?

6              THE COURT:  If you could just move the microphone

7    closer to him.  I think he'll probably be much more comfortable

8    sitting next to you then standing over there.

9              THE DEFENDANT:  Good afternoon, Your Honor.

10             MR. WEINSTEIN:  Speak louder.

11             THE DEFENDANT:  Oh.  Good afternoon, Your Honor.

12             THE COURT:  Good afternoon.

13             THE DEFENDANT:  I take full responsibility for what I

14   did, and I'm sorry for what I did, and I'm now -- I meant to

15   say that I'm sorry for everything what I did, and I'm hoping

16   that you have sympathy for me.  And I'm sorry for having my

17   family here seeing me go through this here in court.  And I

18   took full responsibility with the agents and the government.

19   And I gave them access to -- I took full cooperation with the

20   government and the agents, and I'm just sorry for what

21   everything I did, and I wish that you give me another chance in

22   society, Your Honor.

23             MR. WEINSTEIN:  Judge, can I help him a little bit?

24   Because I prepared him, and I think he's just nervous.

25             THE COURT:  Sure.  You want to ask him questions?

| | |
|---|---|
| 1 | MR. WEINSTEIN:  I do. |
| 2 | THE COURT:  Okay. |
| 3 | MR. WEINSTEIN:  Will, do you remember when I asked you |
| 4 | about finding a trade in prison? |
| 5 | THE DEFENDANT:  Yes, sir. |
| 6 | MR. WEINSTEIN:  All right.  And remember you said to |
| 7 | me that you wanted to find a trade in prison and you would be |
| 8 | willing to work in electricity? |
| 9 | THE DEFENDANT:  Yes, sir. |
| 10 | MR. WEINSTEIN:  All right.  So you think that you |
| 11 | can -- one of the factors that Court's gotta look at is, you |
| 12 | know, the potential that you could commit another crime when |
| 13 | you get out. |
| 14 | Do you think that you would be willing to place |
| 15 | yourself in a position where you could study and learn a trade |
| 16 | when you're in prison? |
| 17 | THE DEFENDANT:  Yes, sir. |
| 18 | MR. WEINSTEIN:  All right.  Secondly, tell the Court a |
| 19 | little bit about -- you know, you've got family.  Who's your |
| 20 | family?  Who's your support here? |
| 21 | THE DEFENDANT:  My mom, my sister, my niece, my |
| 22 | brother, my baby mama, my daughter. |
| 23 | MR. WEINSTEIN:  So you've got a lot of family |
| 24 | supporting you, correct? |
| 25 | THE DEFENDANT:  Yes, sir. |

```
1              MR. WEINSTEIN:  All right.  And it's my understanding
2     you've been to prison before, but it's been over 20 years since
3     you've gotten out?
4              THE DEFENDANT:  Yes, sir.
5              MR. WEINSTEIN:  All right.  The other thing I know,
6     because I know you very well, is you've struggled before with
7     alcoholism and drug use.
8              Can you talk to the Court about that a little bit?
9              THE DEFENDANT:  Yes, I have an alcohol and drug
10    problem.
11             MR. WEINSTEIN:  And we know that because I represented
12    you in front of Judge Carpenter-Toye on the DUI.
13             Do you remember that?
14             THE DEFENDANT:  Yes, sir.
15             MR. WEINSTEIN:  All right.  So you've had alcohol
16    violations before?
17             THE DEFENDANT:  Yes, sir.
18             MR. WEINSTEIN:  And you told me that you were taking
19    some of the capsules.  Can you tell the Court about that a
20    little bit?
21             THE DEFENDANT:  Yes, I was taking heroin and ecstasy
22    pills and cocaine and other type of drugs.
23             MR. WEINSTEIN:  All right.  Now, the prosecutor
24    mentioned that there's violence.  I don't -- I know your
25    background pretty well.  I don't think you have much violence
```

1   in your background.

2          During the course of these crimes, these trafficking

3   crimes, were you committing any violence?

4          THE DEFENDANT:  No, sir.

5          MR. WEINSTEIN:  All right.  And during the course of

6   the -- when the police searched your house and law enforcement

7   searched your house and they found the firearm, you weren't

8   using that firearm in anything but a possible self-defense

9   mechanism?

10          THE DEFENDANT:  Yes, sir.

11          MR. WEINSTEIN:  All right.  So you never used that in

12   a crime?

13          THE DEFENDANT:  No, sir.

14          MR. WEINSTEIN:  All right.  Now, let's talk about your

15   level of cooperation.

16          You immediately said you weren't going to trial and

17   said you wanted to take a plea; is that fair to say?

18          THE DEFENDANT:  Yes, sir.

19          MR. WEINSTEIN:  And you met with the government and

20   their agents in this particular courthouse.

21          Do you remember that?

22          THE DEFENDANT:  Yes, sir.

23          MR. WEINSTEIN:  And you were there for hours

24   testifying -- or not testifying, but speaking to them, correct?

25          THE DEFENDANT:  Yes, sir.

1          MR. WEINSTEIN:  And were you untruthful in any way?

2          THE DEFENDANT:  Yes, sir.  I was truthful.

3          MR. WEINSTEIN:  No, you were truthful.  I asked it

4   backwards.

5          You were truthful the whole time?

6          THE DEFENDANT:  Yes, sir.

7          MR. WEINSTEIN:  And you didn't beat around the bush or

8   anything like that?

9          THE DEFENDANT:  No, sir.

10          MR. WEINSTEIN:  All right.  It's fair to say that, you

11   know, your memory's not great.  They asked you a lot of

12   questions about different drugs.  You didn't know the mixtures

13   or anything like that?

14          THE DEFENDANT:  Yes, sir.

15          MR. WEINSTEIN:  All right.  But you did answer the

16   questions to the best of your ability?

17          THE DEFENDANT:  Yes, sir.

18          MR. WEINSTEIN:  All right.  What can you tell the

19   Court to assure him -- look, the government's -- and I'm going

20   to get to say my argument in a second.

21          Why should you get more than 15 percent off?

22          THE DEFENDANT:  I cooperated with the government.  I

23   gave them access to things they didn't know about.

24          MR. WEINSTEIN:  All right.  And you explained to them

25   all of your communication with the Chinese government or,

1    excuse me, the Chinese companies?

2              THE DEFENDANT:  Yes, sir.

3              MR. WEINSTEIN:  All right.  You explained to them --

4    you gave them all the intelligence they needed to what your

5    part of the operation was?

6              THE DEFENDANT:  Yes, sir.

7              MR. WEINSTEIN:  All right.  You didn't hesitate with

8    anything in that regard?

9              THE DEFENDANT:  No, sir.

10             MR. WEINSTEIN:  They had full access to your phone,

11   right?

12             THE DEFENDANT:  Yes, sir.

13             MR. WEINSTEIN:  They asked you questions about what

14   was found in your phone?

15             THE DEFENDANT:  Yes, sir.

16             MR. WEINSTEIN:  Now, how is your -- since you've been

17   in custody, have you gotten any DRs or in trouble or anything

18   like that?

19             THE DEFENDANT:  No, sir.

20             MR. WEINSTEIN:  All right.  And you've cooperated

21   fully with me?

22             THE DEFENDANT:  Yes, sir.

23             MR. WEINSTEIN:  And you've been communicative with

24   your family?  You haven't dropped off the face of the earth or

25   anything like that?

```
 1                THE DEFENDANT:  Yes, sir.

 2                MR. WEINSTEIN:  Now, let's talk about the money.

 3                You had thousands upon thousands of dollars forfeited

 4     from you, correct?

 5                THE DEFENDANT:  Yes, sir.

 6                MR. WEINSTEIN:  And originally we were trying to get

 7     some of it back.  But eventually we agreed it was in your best

 8     interest to waive that right because of the fact that you

 9     wanted to show the Court you were willing to take a big hit

10     financially?

11                THE DEFENDANT:  Yes, sir.

12                MR. WEINSTEIN:  All right.  So you lost thousands upon

13     thousands of dollars in jewelry, correct?

14                THE DEFENDANT:  Yes, sir.

15                MR. WEINSTEIN:  And you were aware of that?

16                THE DEFENDANT:  Yes, sir.

17                MR. WEINSTEIN:  And you're not contesting that?

18                THE DEFENDANT:  Yes, sir.

19                MR. WEINSTEIN:  That's no, you're not going to --

20                THE DEFENDANT:  No, no.  No, sir.  I'm not.

21                MR. WEINSTEIN:  All right.  And you don't think that

22     you'll have any problem in prison, correct?

23                THE DEFENDANT:  No, sir.

24                MR. WEINSTEIN:  When was the last time you were

25     arrested for a violent felony?  It's my underring it was like
```

1    20 years ago.

2              THE DEFENDANT:  Like 22 years ago.

3              MR. WEINSTEIN:  All right.  And so since then it's

4    been misdemeanors and drugs and that sort of thing?

5              THE DEFENDANT:  Just -- since the misdemeanor, driving

6    with no license, that's it.

7              MR. WEINSTEIN:  Is there anything else?  Before I get

8    to say my peace, is there anything else you want to testify to

9    that you think the judge should know?

10             THE DEFENDANT:  Uhm, like in what way?

11             MR. WEINSTEIN:  Well, is there anything I haven't

12   talked about?

13             THE DEFENDANT:  No, that's --

14             MR. WEINSTEIN:  You're good?

15             THE DEFENDANT:  Yes.

16             MR. WEINSTEIN:  All right.  Thank you, Judge.

17             THE COURT:  I'm just going to ask if the government

18   has any questions.  I think it's better not to.  But if you

19   have any specific questions that --

20             MS. BOTERO:  I'm just going to direct Your Honor, I'm

21   not going to ask any questions, to paragraphs 61, 75, 101, 102,

22   and 103 in the PSI, those document, the domestic violence

23   situations that the defendant was involved in, including within

24   the last ten years.

25             THE COURT:  Okay.  All right.

1        And then, Mr. Weinstein, your argument.

2        MR. WEINSTEIN:  Judge, I wasn't going to start with

3   this, but I will just -- my client -- I've known Will for

4   nearly 20 years.  My client's domestic situation with his

5   mother of his children has been very volatile between the both

6   of them.  He's been stabbed before by the mother of his

7   children.  So I think it more goes both ways than my client

8   being some domestic abuser.  That's not how I was going to

9   start, but having known Will personally, I think it's important

10  for the Court to know that.

11        But if it may please with the Court, I'm ready to

12  begin.

13        THE COURT:  Sure.

14        MR. WEINSTEIN:  The benefit of Will Catis' cooperation

15  cannot be underestimated.  Fifteen percent is not enough, and

16  let me tell the Court why.

17        This Court knows -- I mean, back in the day we used to

18  sit in Mr. Gallagher's office and he'd pull out the tape

19  recorder and Mr. Gallagher would ask -- that's the state

20  prosecutor -- would ask who can you give up.  But in other

21  terms, sometimes the government needs intelligence.  They need

22  to know how things are operating.  It makes them better agents

23  when they know how the deals are done, and when they can speak

24  to someone who's directly giving them the information and the

25  intelligence.  I recognize Ms. Botero said that it's context

1    and color.  I use the term intelligence.  That's what he gave

2    them.  So I don't believe that 15 percent is enough, and we'll

3    talk about it.

4         My client immediately knew when he was arrested he was

5    cooked.  And instead of being obstreperous or disagreeing, he

6    cooperated with the agents.  It's my understanding he gave them

7    full access to his storage unit.  They had access to his phone.

8    And I'm going to circle back to this.  But when they asked him

9    questions in the debrief about his phone, he freely spoke about

10   that.

11        So back in August of last year, he sat down in the

12   igloo.  And I think we do need to talk about it, where he sat

13   there.  We got there around 10:30-ish in the morning.  We

14   didn't finish until almost 1:00 p.m.  So the Court can do the

15   math.  This was not a like simple debrief.  Even with the

16   transfer of the prisoner and everything like that, we were

17   sitting there for two hours asking him questions.  And during

18   those two hours, available to us was the DEA, IRS, Plantation

19   Police Department Task Force Officers.  So they were multiple

20   government agencies, and the US Attorney's Office, who were

21   interested in hearing what Mr. Catis had to say.

22        While we were there, we discussed as follows.  I'm

23   just pulling out my notes.  The government did ask him about

24   the Chinese companies.  They asked him about what was found on

25   his phone.  They asked him about the drugs.  They asked him

1    about the mixtures.  But they also -- he gave up some really

2    what I feel was very valuable information that we talked about

3    in great length.

4            We talked about going to the flea market.  We talked

5    about an old man named pops who has the Jamaican curtain who's

6    called something called ji bayday, which he testified to or

7    spoke to them about.  He gave up the names of multiple people

8    in his phone.

9            Now, whether or not they can make cases off the people

10   in his phone.  So I don't know that they made cases, but at

11   least he was willing to give those names.  I have those names.

12   I don't want to put them on the record, but I have names of at

13   least two people that he gave up.  Whether they got them, I

14   don't know.

15           He gave up more information.  He gave up how many

16   ounces that he would buy at a time from these Chinese

17   companies, that he was buying the nitazene from China.  We all

18   know that China is manufacturing whatever the heck they want

19   and they're shipping it off to this country.

20           So the prosecutor was talking about how -- you know,

21   how dangerous it was that he was doing.  But my client is a

22   tiny minnow in a vast ocean of what China's doing.  So I don't

23   want to see him get wacked for 160 some-odd-months when China

24   made it so easy for him.

25           Literally he was getting on his phone.  And with

1   respect to Will, he's not an educated man.  And someone who's

2   not that educated is able to sophisticatedly enough get on

3   WhatsApp and be able to order stuff like he's ordering

4   something off Amazon that turns out to be a deadly synthetic

5   opioid.  They made it very easy for him.  And it was easy

6   money, and unfortunately he fell trap to that.

7        But he did give up the names of someone who was a

8   crack dealer who was selling drugs out of a carwash.  He gave

9   up the names of someone who worked at the Family Dollar Store.

10  I have those names.  I just don't want to put them on the

11  record.

12       During that debrief he also admitted that he was

13  taking the protonitazene and that he was swallowing the

14  capsules.  So the Government knows that.

15       Now, let's talk about a few other things.  As far as

16  the level of cooperation, what happened was I was hopeful that

17  the government was going to be offering a little more than

18  15 percent.  I was really hopeful that I was going to sit here

19  and come in and they were going to offer 25 to a third.  I was

20  going to ask for 50 percent, and then the Court would meet us

21  somewhere in the middle.

22       It wasn't until kind of the sentence -- not anybody's

23  fault.  It's just we're busy.  I didn't find out until late in

24  the game -- it's my fault.  I'll take the blame -- that it was

25  going to be 15 percent.  I was really hopeful.  And Will and I,

1   when we met in preparation for this, we were talking about my

2   expectations based upon my level of experience doing this for

3   so many years was 25 to a third.  That's where my head was at.

4        My thinking was, and I'm just going to spit it out

5   there, if the Court took off a third of the 188, he would

6   roughly, roughly be about 12 after a little gain time.  And I

7   don't know if he's eligible for RDAP because of gun, but I am

8   going to ask for it anyway.  You know, he'd probably serve the

9   next decade of his life in prison.  And he knew that.  He came

10  in here prepared for that.  I don't think based upon his level

11  of cooperation 15 percent is enough.

12       The Court -- and, with respect, I know you very well.

13  And I can read this Court.  And I know when you said that he

14  already received some benefits because of his -- because I did

15  go to the government.  And I immediately said he's going to

16  cooperate, he's not going to trial.  And I'll take credit for

17  that.  And I can read the Court, though, saying, hey, he's

18  already gotten some benefits, why should he get more.  He

19  should get more.  Here's why.

20       Let's talk about the forfeiture.  I asked him about

21  this, but I want to argue it.  They took -- this was all for

22  naught.  Every penny that he earned from this, the hundreds of

23  thousands of dollars and the jewelry, it's all gone.  He's

24  losing everything.  He's going to get out of prison.  He was

25  born in '82.  He's in his early 40s now.  He's going to be

1    older than I am when he gets out, and he's going to have to

2    start all over.  And that's very tough for an individual.

3    160 months is too high.

4           As far as his level of violence, we have all seen

5    people who are way more violent than Will Catis.  Will Catis is

6    not an violent individual, Judge.  He hasn't been to prison in

7    roughly 20 years, which come to think of it is about when I met

8    him.  So maybe -- I don't know.  Maybe I can take a little

9    credit for that.

10          As far as the 3553 factors are concerned, the Court

11   must look to deterrence.  I'm aware of that.  The Court can

12   deter future criminals by giving him -- even if you give him a

13   third off or 25 percent off or 50 percent off, you're still

14   going to be deterring people because he's still going to do a

15   minimum of a decade in prison.  He's not getting some short

16   sentence.

17          The other thing the Court needs to look at under 3553

18   is the educational and vocational training.  Will never got

19   that.  Will's coming to you living on the streets basically his

20   entire life and making his way.  And unfortunately China made

21   that easier for him than it needed to be.

22          Twenty-eight months is a drop in the bucket.  It's too

23   small.  It's too small for his level of cooperation.  And

24   here's why.  And I'm going to end on this.

25          The only reason he scores so high, because it is only

1   a category II under criminal history, is the amount of drugs,

2   right?  And unfortunately it was just -- it was easy access for

3   him.  And a guy like Will, who's not all that sophisticated, it

4   was -- he didn't think about the consequences of his actions

5   when he was able to get on WhatsApp and speak with some person

6   in China who would readily ship it to him.  It was too easy.

7   And, unfortunately, for a guy like him who doesn't see it --

8   you see it.  I see it.  He doesn't see it.

9          He has exceptional family support.  I cannot tell you

10  how much they contact me saying that they want me to do my best

11  job for him because of the fact that he is needed at home.

12  They are all aware he's going to serve significant prison time.

13         I'm not asking you to do it for me.  I'm not asking

14  you to do it because of -- and, again, I read you very well

15  earlier, that he's already gotten some benefit.  To me there's

16  benefits as following.

17         One, early admissions and saying you're going to

18  plead.  And two, cooperation.

19         I believe that his level of cooperation based upon who

20  Will Catis is and his level of unsophistication was

21  outstanding.  He gave them everything he had the ability to do.

22  You know, you and I may have the ability to walk someone

23  through from Point A to Point B.  Will doesn't have that

24  ability.  But he did the best he could do.  And in that regard,

25  15 percent is just not high enough.

1    So I'm advocating for you to go a little higher.  I'm

2  advocating for you that the deterrence and the 3553 factors

3  that do not warrant a departure are not strong enough that this

4  Court can depart a little bit more.  I'm really just asking if

5  the Court does a third, which I'm not asking for the

6  50 percent, which I really thought I was, if you do a third,

7  he's still going to do a decade in prison.

8    As far as who he distributed to, I respectfully

9  disagree with Ms. Botero respectfully.  I think he did give a

10  couple names.  Unfortunately, it just wasn't big enough for the

11  government, that's how I saw it, as who he was distributing to.

12  I recognize it's a large amount of drugs.

13    The Court can deter, give him the vocational that he

14  needs, and do it with a third off.  That's what I'm asking for

15  at this point in time.  I was going to ask for 50 percent, but

16  I think a third based upon what the government's argument is

17  more than reasonable.

18    Let me check my notes and make sure I didn't miss

19  anything.

20    And as far as protecting the public from further

21  crimes under 3553(b), (1)(b), it is to afford adequate

22  deterrence of criminal conduct.  Well, clearly if he does a

23  decade in prison, by the time he gets out he's going to be in

24  his 50s.  To protect the public from further crimes of the

25  defendant.

1    I agree with Ms. Botero that opioids are very, very,

2    very dangerous, and clearly he will not be able to deal in

3    opioids while he's in prison, but I do think if he earns a

4    trade, that will be a sufficient deterrent.

5    The Court has multiple sentences that you can give

6    him, and I think based upon his real -- his extensive level of

7    cooperation, that the intelligence he gave law enforcement

8    cannot be understated, I think that 15 percent is just not

9    enough.  I'm asking the Court to go a little higher.

10   Thank you.

11   THE COURT:  Thank you, Mr. Weinstein.

12   And then, Ms. Botero, back over to you.

13   MS. BOTERO:  Yes, Your Honor.  I just would like to

14   make a couple of clarifications.

15   Mr. Weinstein said that every penny that he got was

16   taken from him and now he has basically no nest egg.  That's

17   what he's arguing, when he gets out of jail.  And the reality

18   is, Your Honor, those were all illicitly made.

19   THE COURT:  He's got to make certain arguments.  As

20   well as he reads me, he also know that he's making that

21   argument but it's not going to mean anything to me.

22   MS. BOTERO:  Understood, Your Honor.  Then I'll move

23   on.

24   Mr. Weinstein also raised the argument that Mr. Catis

25   got all of this from China because it was easy.  And I'm not

1    saying that that isn't true in terms of the protonitazene that

2    he was getting from China, but he wasn't getting fentanyl from

3    them and he wasn't getting heroin from them and he wasn't

4    getting fluorofentanyl from them, and he wasn't getting some of

5    those other drugs from them.  He was getting those here from

6    contacts either in South or Middle Florida.  And so by saying

7    he's just a little guy when China is this big dealer, that's

8    really not reflective of the facts of this case.

9            We identified him as receiving the protonitazene from

10   China.  The amount we obtained from him was in the neighborhood

11   of 200 grams from that parcel.  And as you can see from the

12   PSI, the fentanyl, fluorofentanyl, and heroin was significantly

13   more, and he was not receiving any of that from China.

14           So I just wanted that to be a little clear, because I

15   think based on what Mr. Weinstein was arguing it made it sound

16   like all the drugs that he had in his possession were somehow

17   obtained from China, and that is not the case.

18           And I'm going to rest on my earlier arguments as it

19   pertains to the reduction for cooperation.  He, of course --

20   you know, as he said earlier, will agree to disagree.  So I'm

21   just going to rest on my earlier arguments, but I just wanted

22   to clarify a couple of those factual.

23           THE COURT:  I understand.

24           And then last word.  Anything else?

25           MR. WEINSTEIN:  Oh, I hope you weren't offended when I

1   said I could read you.

2          THE COURT:  No, I think two things.  I think you're

3   right on that, and I think it's important for lawyers on both

4   sides to be able to read the judge.  Because the sentencing

5   could be quite different in front of Judge Moore versus

6   Singhal.

7          MR. WEINSTEIN:  Yes.  No, I agree with Ms. Botero.  I

8   wasn't even remotely suggesting that there were no gotten

9   gains.  They were.  I'm suggesting that -- I mean, it was all

10  for naught.  That was really my argument.

11         THE COURT:  Yes.  No, I understand.  Look, people come

12  in, as an example, and they say something like, Judge, my

13  client's going to get deported.  And, you know, I think that

14  would have an affect on a number of judges.  It has no affect

15  on me because you're essentially saying, Judge, punish a United

16  States citizen worse.  And so it has the opposite affect on me,

17  right?  But I don't use it because I'm not going to punish

18  someone worse because it's not something I should consider.

19         But there are certain arguments, look, that you have

20  to make for a couple reasons.  One, because under 3553 they're

21  important.  And, two, on those cases where potentially you're

22  raising an issue for appeal.  So, you know, let's say there was

23  a 922(g) charge.  You know what the law is on that, but you're

24  still going to say, hey, Judge, it's unconstitutional.  Why?

25  Because it's in the pipeline.  So we're on the same page there.

1    You know, you all handle some big cases.  I don't know

2  that I've ever had a case before with 20,000 kilograms of

3  converted weight.  I mean, 20,000 kilograms.  That's a

4  remarkable number.

5    And fentanyl, as you know, it's just an awful drug.

6    And Ms. Botero pointed out that a small amount -- I

7  think, what is it, two grains of salt can kill somebody, and

8  this is -- I shouldn't say that.  An amount of fentanyl the

9  same size as two grains of salt could kill somebody.  And so

10  when you look at what's basically 18,000 kilograms converted

11  weight of fentanyl, I mean, it's just amazing.

12    So really what this whole case comes down to is you

13  have a defendant who is facing an incredibly high sentence and

14  to what level does the guilty plea and the cooperation mitigate

15  his sentence, you know.

16    And so I think it was important for me, Mr. Weinstein,

17  to make sure that your client and the family understands how

18  much benefit you were able to secure for him prior to today.

19  Because people forget about that.  And he could easily have

20  these consecutive sentences tacked on.  And then I know what

21  these guidelines would look like.  It would say, as an example,

22  188 to 235 months as to Count 1, plus seven years, plus five

23  years, you know.  And so it's -- you know, it's a remarkable

24  amount.

25    I think your client needs to kind of sit up straight

1  and open his eyes.

2          MR. WEINSTEIN:  Judge, I will tell you, there's no

3  disrespect.  I know Will very well.  That's just who he is.

4          Sit up straight.

5          THE COURT:  I remember from the guilty plea, too.

6  But, I mean, I think he's -- you know, it's important that he

7  understand all of this.  Because, I mean, in the end we've all

8  dealt with this.  He's someone who's getting a break who's not

9  going to understand that he's getting a break.  And those are

10 the most difficult individuals to deal with.  When they're

11 actually getting a sentence that's likely really better than

12 they might have gotten in any other courtroom in the district,

13 but they don't recognize it.

14          And if you look, for example, at paragraph 103 in the

15 Presentence Investigation Report, that's a crime -- you know, I

16 have basically a beautiful statement by his niece.  He's a

17 family man.  We look up to him.  Yet at some point in his life

18 with a little ten-year-old girl with him he threatened to kill

19 the girl's mother.  That's not a great family man in my eyes.

20 In front of a ten-year-old girl he knocked the girl's mother's

21 teeth out.  That's just not a good luck.

22          So I respect his niece's statement that he's been a

23 good family man to her.  But, Mr. Weinstein, I always talk

24 about the Troutman case that I had in state court as a judge

25 when in comes family members saying he's a great family man,

1　yet he was accused of stabbing his son to death.  How is that

2　ever a good family man?  So it just -- I've got to really weigh

3　things.

4　　　　　What I have in front of me is an individual that's

5　scoring 188 to 235 months.  I'm told by the government that a

6　15 percent reduction, which comes out to 28 months, is

7　appropriate based on the level of cooperation.  Mr. Weinstein,

8　you are hopeful for up to 50 percent.  The only cases I've seen

9　with 50 percent are those where an individual has testified

10　well and a conviction was secured.  I've seen 33 percent on

11　some other cases.  I've seen 25 percent on some other cases.

12　To me, I mean, it would make a huge difference if it's eight

13　indictments versus one.  And so that's why I think that

14　information was quite important.

15　　　　　But, really, what I have to do is just consider the

16　full measure of the man, consider what you're asking for.

17　You're in essence -- I think once push comes to shove, you're

18　suggesting something around 120 to 125 --

19　　　　　MR. WEINSTEIN:  Yes.

20　　　　　THE COURT:  -- which is the third off.  Ms. Botero is

21　suggesting 160.

22　　　　　I read everything ahead of time.  I typically, so you

23　all know, walk out with a number in my head, and you all will

24　adjust that number a little bit.  That's typically how it

25　works.  Sometimes it's quite different than that based on the

1   presentation, but rare.  It just depends on the kind of case.

2       But given all of that, that's my preamble, I've

3   considered the statements of the parties.  I've reviewed the

4   presentence report.  I've looked at the advisory guidelines.

5   I've considered every factor under 18 United States Code

6   § 3553(a).

7       I am going to give Mr. Catis credit for his assistance

8   to the government.  A little bit more than what Ms. Botero is

9   asking for.  A little bit less than what you're asking for,

10  Mr. Weinstein.

11      It's first the finding of the Court that Mr. Catis is

12  not able to pay a fine.

13      It's the judgment of the Court that this defendant,

14  Will Catis, be committed to the Bureau of Prisons to be

15  imprisoned for 144 months as to Count 1.

16      Upon release from imprisonment, he will be placed on

17  supervised release for a term of three years as to Count 1.

18      Within 72 hours of release, he will report in person

19  to the probation office in the district where he is released.

20      While on supervised release, he'll comply with the

21  mandatory and standard conditions of supervision.  Those are

22  all referenced in Part F of the Presentence Investigation

23  Report.  And they're specifically paragraphs 153 to 174.  And

24  I'll incorporate those by reference into this sentencing order.

25      They include the following special conditions:

1   Financial disclosure requirement, self-employment restriction,

2   permissible search, and unpaid restitution fines or special

3   assessments, all as noted in Part F of the presentence report.

4          The agreement that you all reached was that this is

5   all as to one count.  So there's a special assessment due

6   immediately to the United States of $100.

7          Total sentence then becomes 144 months, three years'

8   supervised release, and a $100 special assessment.

9          I do have the preliminary order of forfeiture at

10  docket entry 36.  So I am going to order the defendant's right,

11  title, and interest to the property identified therein be

12  incorporated into this order and be forfeited.

13         And, Mr. Weinstein, now that sentence has been

14  imposed, do you or Mr. Catis object to the Court's finding of

15  fact or the manner in which sentence was pronounced?

16         MR. WEINSTEIN:  No, Judge.

17         THE COURT:  Mr. Catis, by law you do have the right to

18  appeal any sentence imposed.  Any notice of appeal must be

19  filed within 14 days after the entry of judgment.  If you're

20  unable to pay the cost of an appeal, you may apply for leave to

21  appeal in forma pauperis, which means at low cost to you.

22         I will tell you, Mr. Weinstein did an outstanding job

23  for you.  And I will also draw your attention to paragraph 12

24  of your plea agreement at docket entry 31, which is an

25  appellate waiver.  At that point in time, during your guilty

1  plea, I outlined some circumstances wherein you could take an

2  appeal.  This sentence does not fall within those

3  circumstances.  But I'm not going to say, hey, you're not

4  allowed to file a notice of appeal.  I mean, that's going to be

5  up to you.

6          Any other issues?  I know you have the one count as

7  well.

8          MS. BOTERO:  Yes, Your Honor.  At this time the

9  government moves to dismiss the remanning counts of the

10 indictment.

11         THE COURT:  Okay.  So we'll note that all other counts

12 in this indictment are dismissed.

13         How about you, Mr. Weinstein?  Any thoughts in terms

14 of placement or any other issues?

15         MR. WEINSTEIN:  Yes, Judge.  Based upon the family's

16 request, they are asking that the Court recommend as close to

17 the Southern District of Florida as possible for placement.

18         And, secondly, Judge, I'm not sure that he's going to

19 be eligible because there was the firearm mentioned in the PSI,

20 but I would ask for an RDAP recommendation.  He's clearly got

21 alcohol use issues.  I know it personally.  He had a previous

22 DUI I represented him on.  So I am going to ask for the RDAP.

23         THE COURT:  Okay.  All right.  With regard to

24 recommendation of placement, I will certainly say that it

25 should be as close to South Florida as possible based on

1  Mr. Catis' extensive family.

2          Mr. Catis, that, of course, is going to be up to the

3  Bureau of Prisons.  They have to determine where to place

4  people.  A lot of that depends on other cases, on codefendants,

5  on things like that.

6          With regard to RDAP, I have no issue at all

7  recommending RDAP.  You might be right, Mr. Weinstein.  But the

8  Presentence Investigation Report, paragraphs 111 through 117,

9  as well as what you've stated, support that Mr. Catis would

10 benefit from RDAP.

11         MR. WEINSTEIN:  Thank you.

12         THE COURT:  Anything else at all?

13         MR. WEINSTEIN:  No, thank you, Judge.

14         THE COURT:  Okay.  I do want to thank his family for

15 being here to support him.  No matter what a sentence is, he's

16 going to need that family support.  I do think his niece's

17 statement was excellent.  And I do wish you all the best of

18 luck.

19         As far as the lawyers go, thank you all for your very

20 hard work.

21         MS. BOTERO:  Thank you, Your Honor.

22         MR. WEINSTEIN:  Thanks, Judge.

23     (Proceedings concluded at 3:18 p.m.)

24

25

1          C E R T I F I C A T E

2          I, Karl Shires, Registered Merit Reporter and Federal

3   Certified Realtime Reporter, certify that the foregoing is a

4   correct transcript from the record of proceedings in the

5   above-entitled matter.

6          Dated this 23rd day of January, 2025.

7

8

9   Karl Shires, RMR FCRR

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MR. WEINSTEIN: [66]
MS. BANKS: [6]
18/24 19/1 19/4 19/6
20/4 21/2
MS. BOTERO: [24]
2/7 3/23 4/22 5/7 6/5
9/3 9/8 9/13 10/3 10/7
11/11 11/15 12/10
16/9 16/13 16/16 17/1
17/14 18/7 28/20
37/13 37/22 45/8
46/21
THE COURT: [60]
THE DEFENDANT: [52]
THE PROBATION
OFFICER: [1] 6/2

$
$100 [2] 44/6 44/8

'
'82 [1] 33/25

-
-v [1] 1/6

1
101 [2] 1/19 28/21
102 [1] 28/21
103 [2] 28/22 41/14
10:30-ish [1] 30/13
11 [2] 1/8 4/24
111 [1] 46/8
11200 [1] 1/19
117 [1] 46/8
12 [4] 1/21 4/24 33/6
44/23
120 [1] 42/18
125 [1] 42/18
14 [1] 44/19
144 [2] 43/15 44/7
15 percent [13] 8/5
8/6 8/9 8/24 16/18
25/21 30/2 32/18
32/25 33/11 35/25
37/8 42/6
15 years [1] 16/24
153 [1] 43/23
160 [6] 8/8 11/18
12/25 15/21 31/23
42/21
160 months [1] 34/3
174 [1] 43/23
18 [3] 16/20 17/3
43/5
18,000 kilograms [1]
40/10
188 [5] 5/5 5/16 33/5
40/22 42/5
188-month [1] 8/7
1:00 p.m [1] 30/14

2
2 milligrams [1] 12/7
20 [6] 16/11 16/14
23/2 28/1 29/4 34/7
20,000 kilograms [2]
40/2 40/3
200 grams [1] 38/11
2024 [1] 1/8
2025 [1] 47/6
203G [1] 1/24
20th [1] 1/19
22 [1] 28/2
23-CR-20393-Altman
[1] 7/6
23-CR-60116-SINGH
AL [1] 1/2
235 [4] 5/5 5/17
40/22 42/5
23rd [1] 47/6
240 [1] 16/14
25 [3] 18/4 32/19
33/3
25 percent [2] 34/13
42/11
262 [2] 16/7 16/14
28 [3] 8/7 16/21 42/6
299 [1] 1/24
2:17 [1] 1/9

3
30 [1] 20/15
31 [1] 44/24
327 range [1] 16/8
33 percent [1] 42/10
33172 [1] 1/19
33301 [2] 1/21 1/25
3353 [1] 9/1
34 [1] 4/24
35 [3] 5/3 5/16 16/5
3553 [10] 6/8 9/25
11/19 17/9 34/10
34/17 36/2 36/21
39/20 43/6
36 [1] 44/10
38 [2] 5/1 16/5
39 [1] 12/6
3:18 [1] 46/23

4
40 [1] 4/25
40s [1] 33/25
41 [1] 4/25
42 [4] 3/18 9/23 9/24
9/25
43 [3] 3/19 9/23 10/2
44 [7] 3/20 9/9 9/19
9/22 9/23 9/24 11/6
45 [1] 4/6

5
50 percent [6] 32/20
34/13 36/6 36/15 42/8
42/9
50s [1] 36/24

5498 [1] 1/24
5K [3] 6/7 17/1 17/2
5K1.1 [1] 3/21

6
61 [1] 28/21
610 [1] 1/21

7
7.3 grams [1] 12/8
7.3 kilograms [2]
12/6 12/11
72 [1] 43/18
75 [1] 28/21
769-5496 [1] 1/24
7th [1] 1/21

9
9 kilograms [1] 12/1
922 [3] 13/20 17/12
17/20 39/23
924 [3] 13/19 17/12
17/19
954 [1] 1/24

A
ability [4] 25/16
35/21 35/22 35/24
able [15] 7/7 8/3
10/17 10/20 13/2 14/1
14/11 17/11 32/2 32/3
35/5 37/2 39/4 40/18
43/12
above-entitled [1]
47/5
absolutely [1] 15/21
abuser [1] 29/8
acceptance [1] 5/2
access [6] 21/19
25/23 26/10 30/7 30/7
35/2
account [1] 10/20
accused [1] 42/1
actions [1] 35/4
activities [2] 6/25
13/8
actual [1] 12/13
addendum [1] 4/6
additional [1] 9/16
Additionally [3] 7/20
8/20 14/15
additions [2] 4/20
5/11
address [1] 9/25
adequate [2] 14/21
36/21
adjust [1] 42/24
adjusted [1] 5/1
admissions [1] 35/17
admitted [1] 32/12
adopt [1] 5/25
advise [1] 16/1
advisory [2] 5/4 43/4
advocating [2] 36/1

affect [3] 39/14 39/14
39/16
afford [1] 14/21
36/21
afternoon [2] 2/7
2/13 18/10 21/9 21/11
21/12
agencies [1] 30/20
agent [2] 2/9 7/16
agents [5] 21/18
21/20 24/20 29/22
30/6
aggressive [1] 14/10
ago [2] 28/1 28/2
agree [3] 37/1 38/20
39/7
agreed [2] 13/17 27/7
agreeing [1] 6/14
agreement [5] 3/12
5/6 5/15 44/4 44/24
ahead [1] 42/22
alcohol [2] 23/9
23/15 45/21
alcoholism [1] 23/7
allowed [1] 45/4
Altman [1] 7/6
amazing [1] 40/11
Amazon [1] 32/4
amended [3] 3/18
3/19 10/10
AMERICA [1] 1/4 2/3
amount [6] 35/1
36/12 38/10 40/6 40/8
40/24
amounts [1] 17/25
analysis [1] 6/21
answer [2] 17/15
25/15
answering [1] 18/1
anticipate [1] 8/23
anybody's [1] 32/22
anyway [1] 33/8
appeal [7] 39/22
44/18 44/18 44/20
44/21 45/2 45/4
appearances [2]
1/16 2/5
appellate [1] 44/25
apply [1] 44/20
appreciate [2] 11/4
11/5
approached [1] 14/9
appropriate [10] 2/22
6/4 8/6 8/9 8/25 15/21
16/23 17/1 17/8 42/7
April [1] 1/8
area [2] 2/9 8/19
argue [2] 16/20 33/21
argued [2] 16/16
16/18
arguing [5] 15/12
15/12 18/3 37/17
38/15

510/7
16/10 25/20 29/1
36/16 37/21 37/24
39/10
arguments [4] 37/19
38/18 38/21 39/19
arrest [2] 11/25
13/14
arrested [5] 7/1 7/2
10/19 27/25 30/4
asked [10] 18/2 22/3
25/3 25/11 26/13 30/8
30/24 30/25 30/25
33/20
asking [11] 30/17
35/13 35/13 36/4 36/5
36/14 37/9 42/16 43/9
43/9 45/16
assertions [2] 10/4
10/8
assessment [2] 44/5
44/8
assessments [1]
44/3
assistance [5] 6/15
7/4 10/22 10/23 43/7
Assistant [1] 1/18
assisted [2] 9/14
9/15
assuming [2] 16/6
16/11
assure [1] 25/19
attention [1] 44/23
Attorney's [1] 30/20
Attorneys [1] 1/18
August [1] 30/11
available [1] 30/18
aware [4] 11/22
27/15 34/11 35/12
awful [1] 40/5

B
B-A-N-G-D-E-Y-A [1]
7/6
baby [1] 22/22
back [7] 3/11 15/7
27/7 29/17 30/8 30/11
37/12
background [5] 4/7
13/7 13/23 23/25 24/1
backwards [2] 6/7
25/4
Bangdeya [1] 7/5
Banks [1] 19/4
base [1] 4/24
based [19] 10/16
12/5 12/23 13/23
13/23 13/25 16/10
16/23 17/9 33/2 33/10
35/19 36/16 37/6
38/15 42/7 42/25
45/15 45/25
basically [8] 4/7 4/14
7/22 10/3 34/19 37/16

**B**

basically... [2] 40/10 41/16
basis [1] 12/22
bayday [1] 31/6
beat [1] 25/7
beautiful [1] 41/16
beginning [1] 9/4
behalf [1] 2/8
behavior [1] 15/19
believe [10] 7/3 8/5 8/9 8/24 15/20 17/4 17/5 17/6 30/2 35/19
believes [1] 13/6
benefit [5] 17/11 29/14 35/15 40/18 46/10
benefits [5] 13/22 18/6 33/14 33/18 35/16
best [7] 16/1 18/16 25/16 27/7 35/10 35/24 46/17
better [4] 14/3 28/18 29/22 41/11
big [4] 27/9 36/10 38/7 40/1
bit [10] 6/6 18/14 21/23 22/19 23/8 23/20 36/4 42/24 43/8 43/9
blame [1] 32/24
born [1] 33/25
BOTERO [18] 1/17 2/8 3/7 3/22 4/19 5/9 6/3 11/10 15/23 18/8 29/25 36/9 37/1 37/12 39/7 40/6 42/20 43/8
bottom [2] 8/6 8/7
Boulevard [1] 1/24
break [2] 13/18 41/8 41/9
bring [1] 3/2
bringing [1] 3/2
brother [1] 22/22
Broward [3] 1/24 7/24 12/15
bucket [1] 34/22
Bureau [2] 43/14 46/3
bush [1] 25/7
business [1] 19/21
busy [1] 32/23
buy [1] 31/16
buying [1] 31/17

**C**

calculated [2] 12/4 13/5
calculations [4] 4/23 5/8 5/14 12/2
call [8] 2/1 3/10 8/13 17/6 18/15 18/18

called [3] 9/10 31/6 31/6
capsules [2] 23/19 32/14
care [1] 15/13
carefully [1] 4/10
cares [1] 19/21
caring [2] 19/10 19/17
Carpenter [1] 23/12
Carpenter-Toye [1] 23/12
carwash [1] 32/8
case [16] 12/2 2/22 4/7 7/6 7/7 7/22 9/7 11/23 11/25 17/8 38/8 38/17 40/2 40/12 41/24 43/1
cases [13] 9/6 9/14 9/15 9/16 15/25 31/9 31/10 39/21 40/1 42/8 42/11 42/11 46/4
category [3] 5/4 5/16 35/1
cathinones [1] 8/15
CATIS [30] 1/7 2/3 2/14 2/15 2/16 2/17 2/19 4/4 5/19 6/18 6/23 6/25 7/3 9/6 14/25 16/3 18/19 21/4 30/21 34/5 34/5 35/20 37/24 43/7 43/11 43/14 44/14 44/17 46/2 46/9
Catis' [4] 5/2 8/21 29/14 46/1
certain [2] 37/19 39/19
certainly [1] 45/24
Certified [1] 47/3
certify [1] 47/3
chance [1] 21/21
change [1] 6/1
changed [1] 9/21
characteristics [2] 5/1 13/2
charge [3] 7/3 17/13 39/23
charged [6] 13/18 13/20 15/22 16/7 17/18 17/21
charges [1] 19/7
check [1] 36/18
chemical [2] 6/19 7/10
chemicals [1] 6/20
children [2] 29/5 29/7
China [12] 8/24 31/17 31/18 31/23 34/20 35/6 37/25 38/2 38/7 38/10 38/13 38/17
China's [1] 31/22

Chinese [5] 6/19 25/25 26/1 30/24 31/16
choke [1] 19/13
chosen [1] 17/17
circle [2] 15/7 30/8
circumstances [6] 11/21 12/13 12/23 17/7 45/1 45/3
citizen [1] 39/16
clarifications [1] 37/14
clarify [3] 10/11 10/13 38/22
clarity [1] 10/12
clear [3] 6/16 10/13 38/14
clearly [4] 6/17 36/22 37/2 45/20
client [10] 16/1 17/12 18/6 18/11 29/3 29/7 30/4 31/21 40/17 40/25
client's [2] 29/4 39/13
clients [1] 14/3
close [2] 45/16 45/25
closer [1] 21/7
cloud [2] 10/20 14/12
CM [1] 3/9
CM/ECF [1] 3/9
cocaine [1] 23/22
Code [1] 43/5
codefendants [1] 46/4
colleagues [1] 17/5
collectively [1] 10/1
color [4] 7/14 8/3 11/2 30/1
combining [1] 12/3
come [9] 10/21 10/22 11/8 19/12 19/22 20/22 32/19 34/7 39/11
comes [6] 19/11 19/19 40/12 41/25 42/6 42/17
comfortable [2] 8/16 21/7
coming [2] 20/11 34/19
commit [1] 22/12
committed [1] 43/14
committing [1] 24/3
communicated [1] 10/25
communication [1] 25/25
communications [5] 6/22 7/8 7/23 10/17 10/24
communicative [1] 26/23
companies [6] 6/20

**D**

dangerous [3] 12/16 31/21 37/2
Dated [1] 47/6
daughter [1] 22/22
daughters [1] 20/18
day [6] 13/13 13/14 13/14 21/2 29/17 47/6
days [1] 44/19
DEA [2] 2/9 30/18
deadly [2] 12/1 32/4
deal [2] 37/2 41/10
dealer [3] 13/9 32/8 38/7

company [4] 7/10 7/25 7/25 14/1
completely [1] 18/13
comply [1] 43/20
components [1] 14/6
concerned [1] 34/10
concluded [1] 46/23
conditions [2] 43/21 43/25
conduct [1] 14/22 36/22
confirm [1] 6/12
confrontation [2] 14/10 14/12
confusion [1] 3/4
consecutive [4] 13/19 17/13 17/20 40/20
consequences [1] 35/4
consider [3] 39/18 42/15 42/16
considerate [2] 19/17 19/24
consideration [1] 20/22
considered [2] 44/3 43/5
contact [1] 35/10
contacting [1] 14/1
contacts [3] 13/4 14/18 38/6
contained [2] 8/14 10/5
contesting [1] 27/17
context [2] 7/14 29/25
continue [1] 11/5
conversation [1] 2/21
converted [2] 40/3 40/10
convicted [2] 13/12 13/21
conviction [1] 42/10
cooked [1] 30/5
cooperate [1] 33/16
cooperated [3] 25/22 26/20 30/6
cooperation [19] 6/13 6/14 8/18 8/21 11/17 16/17 16/20 21/19 24/15 29/14 32/16 33/11 34/23 35/18 35/19 37/7 38/19 40/14 42/7
correct [8] 5/7 16/15 22/24 24/24 27/4 27/13 27/22 47/4
corrections [2] 4/21 5/11
corrects [1] 11/6

count [6] 6/15 40/22 43/15 43/17 44/5 45/6 45/10
country [1] 31/19
counts [4] 18/2 18/3 45/9 45/11
County [2] 7/24 12/15
couple [6] 9/2 15/24 36/10 37/14 38/22 39/20
course [6] 3/11 6/24 24/2 24/5 38/19 46/2
courses [1] 14/23
court [35] 1/1 1/24 2/1 2/24 3/15 7/5 14/25 21/17 22/18 23/8 23/19 25/19 27/9 29/10 29/11 29/16 29/17 30/14 32/20 33/5 33/12 33/13 33/17 34/10 34/11 34/17 36/4 36/5 36/13 37/5 37/9 41/24 43/11 43/13 45/16
Court's [2] 22/11 44/14
courthouse [1] 24/20
courtroom [1] 41/12
cousins [1] 19/18
coversheet [1] 4/9
CR [2] 1/2 7/6
crack [1] 32/8
credit [5] 7/4 16/20 33/16 34/9 43/7
credits [1] 16/17
crime [3] 22/12 24/12 41/15
crimes [6] 15/6 15/22 24/2 24/3 36/21 36/24
criminal [10] 5/3 5/16 13/5 13/7 13/7 13/7 13/23 14/22 35/1 36/22
criminals [1] 34/12
cryptocurrency [1] 11/2
curtain [1] 31/5
custody [1] 26/17

**D**

dealing [5] 8/11
11/23 12/14 12/24
14/19
deals [1] 29/23
dealt [1] 41/8
death [1] 42/1
debrief [6] 7/1 10/16
10/21 30/9 30/15
32/12
debriefed [1] 8/15
decade [4] 33/9
34/15 36/7 36/23
decision [1] 20/22
decisions [1] 20/10
decrease [1] 5/2
defendant [28] 1/8
1/20 7/8 7/10 7/11
7/20 7/21 8/11 10/19
11/20 11/23 12/19
12/24 13/2 14/10
14/17 14/22 15/4 15/6
15/9 15/22 16/24 17/2
17/17 28/23 36/25
40/13 43/13
defendant's [3] 3/16
3/18 44/10
defense [3] 2/12 9/18
24/8
deletions [2] 4/20
5/11
depart [1] 36/4
Department [1]
30/19
departure [1] 36/3
depends [2] 43/1
46/4
deported [1] 39/13
deserves [1] 12/25
detail [1] 13/11
deter [2] 34/12 36/13
determine [1] 46/3
determining [1] 17/8
deterrence [6] 14/21
15/3 15/4 34/11 36/2
36/22
deterrent [1] 37/4
deterring [1] 34/14
device [1] 14/12
diamonds [1] 10/14
didn't [11] 15/13
15/13 20/16 25/7
25/12 25/23 26/7
30/14 32/23 35/4
36/18
difference [1] 42/12
different [6] 14/23
14/24 16/22 25/12
39/5 42/25
difficult [1] 41/10
difficulty [1] 9/22
direct [1] 28/20
directly [2] 7/9 29/24

disagree [2] 36/5
38/20
disagreeing [1] 30/5
disclosure [1] 44/1
discuss [1] 4/11
discussed [1] 30/22
dismiss [1] 45/9
dismissed [1] 45/12
disregard [3] 9/9
9/23 10/2
disrespect [1] 41/3
distribute [1] 17/22
distributed [2] 15/10
36/8
distributing [1] 36/11
district [8] 1/1 1/1
1/14 9/14 9/16 41/12
43/19 45/17
docket [9] 3/17 3/18
3/20 9/8 9/19 9/22
11/6 44/10 44/24
document [5] 4/4 4/6
4/15 10/10 28/22
documents [2] 2/20
3/10
doing [7] 7/16 12/22
13/25 14/6 31/21
31/22 33/2
Dollar [1] 32/9
dollars [4] 12/20 27/3
27/13 33/23
domestic [4] 13/10
28/22 29/4 29/8
doubt [2] 18/5 18/7
draw [1] 44/23
driving [1] 28/5
drop [1] 34/22
dropped [1] 26/24
DRs [1] 26/17
drug [9] 6/25 7/23
7/24 8/17 13/9 14/19
23/7 23/9 40/5
drugs [16] 7/18 8/1
11/24 13/16 14/3 15/8
15/9 23/22 25/12 28/4
30/25 32/8 35/1 36/12
38/5 38/16
due [1] 44/5
DUI [2] 23/12 45/22

**E**

earlier [5] 10/14
35/15 38/18 38/20
38/21
early [3] 13/18 33/25
35/17
earned [1] 33/22
earns [1] 37/3
earth [1] 26/24
easier [1] 34/21
easily [1] 40/19
East [1] 1/24
easy [6] 31/24 32/5
32/5 35/2 35/6 37/25

ecstasy [1] 23/21
educated [2] 32/1
32/2
educational [1] 34/18
egg [1] 37/16
eight [5] 9/6 10/14
10/15 34/22 42/12
either [2] 16/18 38/6
electricity [1] 22/8
eligible [2] 33/7
45/19
email [1] 10/19
employment [1] 44/1
enforcement [1] 13/4
24/6 37/7
entire [1] 34/20
entitled [1] 47/5
entry [10] 3/18 3/19
3/20 9/9 9/19 9/22
11/6 44/10 44/19
44/24
ESQ [1] 1/20
essence [1] 42/17
essentially [1] 39/15
Eubanks [1] 18/23
events [2] 19/11
19/19
eventually [1] 27/7
evidence [4] 7/2 7/12
11/3 15/11
evidenced [1] 13/10
exactly [5] 6/12 7/15
7/15 7/22 20/4
example [3] 39/12
40/21 41/14
excellent [1] 46/17
exceptional [1] 35/9
excuse [1] 26/1
expectations [1]
33/2
experience [1] 33/2
explain [2] 7/15 8/4
explained [3] 7/22
25/24 26/3
extensive [2] 37/6
46/1
extremely [2] 14/4
14/4
eyes [2] 41/1 41/19

**F**

face [1] 26/24
facing [1] 40/13
fact [9] 8/2 8/4 10/10
10/16 15/3 15/17 27/8
35/11 44/15
factor [1] 43/5
factors [7] 6/8 9/25
11/19 17/9 22/11
34/10 36/2
facts [3] 16/23 17/7
38/8
factual [6] 3/12 10/4

38/22
factually [3] 9/11
9/13 9/15
fair [5] 2/22 6/4 16/3
24/17 25/10
fall [1] 45/2
family [29] 18/11
18/18 19/11 19/12
19/19 19/22 19/24
20/8 20/9 20/20 20/23
22/9 21/17 22/19
22/20 22/23 26/24
32/9 35/9 40/17 41/17
41/19 41/23 41/25
41/25 42/2 46/1 46/14
46/16
family's [1] 45/15
far [7] 20/10 32/15
34/4 34/10 36/8 36/20
46/19
fast [1] 19/3
father [4] 20/14
20/16 20/17 20/19
fault [2] 32/23 32/24
FCRR [2] 1/23 47/9
Federal [2] 5/20 47/2
feel [2] 19/13 31/2
feelings [1] 4/15
fell [1] 32/6
felon [3] 13/12 13/21
17/20
felony [1] 27/25
fentanyl [11] 8/14
12/6 12/8 12/8 12/11
17/22 38/2 38/12 40/5
40/8 40/11
Fifteen [1] 29/15
Fifteen percent [1]
29/15
figure [2] 16/1 20/19
file [1] 45/4
filed [3] 4/1 10/10
44/19
filing [1] 9/18
filmed [1] 14/11
final [1] 6/8
Financial [1] 44/1
financially [1] 27/10
find [2] 22/7 32/23
finding [3] 22/4 43/11
44/14
fine [2] 18/22 43/12
fines [1] 44/2
finish [1] 30/14
firearm [5] 13/13
13/21 24/7 24/8 45/19
firearms [2] 13/13
13/15
first [3] 2/5 11/21
43/11
five [6] 9/14 9/15
13/19 17/13 17/19
40/22

flag [1] 33/19
17/19
flea [1] 31/4
FLORIDA [13] 1/1 1/8
1/19 1/21 1/25 8/1
8/18 9/14 9/17 12/15
38/6 45/17 45/25
fluorofentanyl [3]
8/15 38/4 38/12
focused [1] 6/24
focusing [1] 9/7
following [2] 35/16
43/25
follows [1] 30/22
Force [1] 30/19
foregoing [1] 47/3
forfeited [2] 27/3
44/12
forfeiture [4] 3/13
12/19 33/20 44/9
forget [2] 16/4 40/19
forma [1] 44/21
Fort [3] 1/8 1/21 1/25
forward [2] 8/21
11/13
found [6] 12/6 13/14
13/15 24/7 26/14
30/24
four [1] 4/25
framework [1] 6/8
frankincense [1]
8/13
freely [1] 30/9
front [5] 3/8 23/12
39/5 41/20 42/4
full [7] 20/3 21/13
21/18 21/19 26/10
30/7 42/16
fuller [1] 20/1
fully [1] 26/21
further [2] 15/6 36/20
36/24
future [2] 15/19
34/12

**G**

gain [1] 33/6
gains [1] 39/9
Gallagher [1] 29/19
Gallagher's [1] 29/18
game [1] 32/24
generally [1] 8/4
getting [13] 7/15
14/13 31/25 34/15
38/2 38/2 38/3 38/4
38/4 38/5 41/8 41/9
41/11
girl [2] 41/18 41/20
girl's [2] 41/19 41/20
girls [1] 20/17
give [13] 11/2 14/3
14/8 14/20 21/21
29/20 31/11 32/7
34/12 36/9 36/13 37/5

51

**G**

give... [1] 43/7
given [2] 7/3 43/2
gives [2] 4/7 5/3
giving [2] 29/24
34/12
Glemy [1] 2/10
go [15] 2/2 2/20 3/11
6/3 6/8 11/1 11/19
15/23 16/4 17/17
21/17 33/15 36/1 37/9
46/19
goes [2] 19/20 29/7
going [56]
good [11] 2/7 2/13
18/10 19/23 21/9
21/11 21/12 28/14
41/21 41/23 42/2
gotta [1] 22/11
gotten [6] 23/3 26/17
33/18 35/15 39/8
41/12
government [21]
1/17 2/6 6/14 11/17
13/6 21/18 21/20
24/19 25/22 25/25
28/17 29/21 30/20
30/23 32/14 32/17
33/15 36/11 42/5 43/8
45/9
government's [4] 2/9
3/20 25/19 36/16
grains [2] 40/7 40/9
grams [2] 12/8 38/11
great [8] 3/24 4/3
19/10 21/2 25/11 31/3
41/19 41/25
grow [1] 20/13
growing [1] 20/16
guess [1] 9/22
guideline [2] 5/4 8/8
guidelines [5] 5/8
5/20 8/6 40/21 43/4
guilty [6] 3/11 13/22
16/2 40/14 41/5 44/25
gun [1] 33/7
guy [3] 35/3 35/7
38/7
guys [1] 20/6

**H**

handle [1] 40/1
handled [1] 17/17
hangs [1] 19/22
happened [1] 32/16
hard [1] 46/20
he'll [3] 3/3 21/7
43/20
head [2] 33/3 42/23
hear [1] 18/11
heard [1] 9/5
hearing [4] 2/4 2/19
2/25 30/21

Hello [1] 18/24
help [1] 21/23
heroin [5] 8/14 17/22
23/21 38/3 38/12
hesitate [1] 26/7
hey [3] 33/17 39/24
45/3
Hi [4] 18/25 19/1 19/5
19/6
high [5] 14/3 34/3
34/25 35/25 40/13
higher [2] 36/1 37/9
highest [1] 12/4
Hill [4] 3/15 5/24 6/17
12/2
history [7] 5/4 5/16
13/1 13/5 13/7 13/23
35/1
hit [1] 27/9
hmm [1] 20/10
holistically [1] 17/7
home [4] 14/2 20/7
20/11 35/11
honestly [1] 13/17
Honor [46] 2/7 3/6
3/23 4/12 4/16 4/18
4/22 5/7 5/21 5/23 6/5
6/6 6/10 7/7 8/2 8/9
9/1 10/3 11/1 11/15
11/16 11/22 12/7
12/18 13/2 13/17
13/24 14/16 14/22
15/7 15/17 15/20
16/13 17/14 18/1 18/7
21/2 21/9 21/11 21/22
28/20 37/13 37/18
37/22 45/8 46/21
HONORABLE [1]
1/13
hope [1] 38/25
hopeful [4] 32/16
32/18 32/25 42/8
hoping [1] 21/15
hours [4] 24/23
30/17 30/18 43/14
house [3] 20/2 24/6
24/7
huge [1] 42/12
huh [1] 16/9
humans [1] 15/15
hundred [1] 19/25
hundreds [2] 12/19
33/22
HYMAN [2] 1/18 2/8

**I**

I'd [2] 11/19 18/3
I'll [5] 9/24 32/24
33/16 37/22 43/24
I'm [47] 2/3 3/10
3/17 4/24 6/6 9/19
12/10 15/7 15/12
15/12 16/4 18/23

21/14 21/15 21/15
21/16 21/20 25/19
27/20 28/17 28/20
28/20 29/11 30/8
30/22 33/4 34/11
34/24 35/13 35/13
36/1 36/1 36/4 36/5
36/14 37/9 37/25
38/18 38/20 39/9
39/17 42/5 45/3 45/18
I've [10] 29/3 40/2
42/2 42/8 42/10 42/11
43/2 43/3 43/4 43/5
identified [3] 7/23
38/9 44/11
identify [1] 7/7 10/17
identifying [1] 7/22
igloo [1] 30/12
II [3] 5/4 5/16 35/1
illicit [1] 14/19
illicitly [1] 37/18
immediately [4]
24/16 30/4 33/15 44/6
important [7] 17/15
29/9 39/3 39/21 40/16
41/6 42/14
imposed [2] 44/14
44/18
imprisoned [1] 43/15
imprisonment [3] 8/8
11/18 43/16
incalculable [1] 15/9
incarcerated [1]
20/11
include [1] 43/25
included [1] 4/6
including [1] 28/23
incorporate [1] 43/24
incorporated [1]
44/12
incorrect [4] 9/11
9/13 9/15 10/13
increase [1] 4/25
incredibly [1] 40/13
indictment [9] 3/12
7/3 7/21 8/5 8/19 8/20
9/21 45/10 45/12
indictments [1]
42/13
individual [4] 34/2
34/6 42/4 42/9
individuals [2] 15/14
41/10
information [6] 8/17
10/20 29/24 31/2
31/15 42/14
ingesting [1] 15/16
intelligence [5] 26/4
29/21 29/25 30/1 37/7
intent [1] 17/22
interest [2] 27/8
44/11
interested [1] 30/21

investigation [15]
3/14 4/5 4/21 5/12
5/25 6/16 6/18 6/19
6/24 7/17 13/3 13/12
41/15 43/22 46/8
involved [1] 28/23
IRS [1] 30/18
ish [1] 30/13
issue [2] 39/22 46/6
issues [5] 4/14 10/11
45/6 45/14 45/21
it's [37] 2/15 9/15
14/8 15/8 16/14 19/13
19/14 20/3 23/1 23/2
25/10 27/25 28/3
28/18 29/9 29/25 30/6
32/23 32/24 33/23
34/22 34/23 36/12
37/21 39/3 39/18
39/24 39/25 40/5
40/11 40/23 40/23
41/6 42/12 42/25
43/11 43/13

**J**

jail [1] 37/17
Jamaican [1] 31/5
January [1] 47/6
jewelry [2] 27/13
33/23
ji [1] 31/6
Jiangsu [1] 7/4
job [3] 12/21 35/11
44/22
judge [26] 1/14 2/13
4/2 5/13 5/18 11/8
18/10 21/4 21/23
23/12 28/9 28/16 29/2
34/6 39/4 39/5 39/12
39/15 39/24 41/2
41/24 44/16 45/15
45/18 46/13 46/22
judges [1] 39/14
judgment [2] 43/13
44/19

**K**

Karl's [1] 19/2
Kathnica [1] 19/4
keep [1] 20/22
kid [1] 20/15
kids [2] 20/1 20/12
kill [4] 12/12 40/7
40/9 41/18
kilo [1] 10/17
kilograms [8] 12/1
12/6 12/9 12/10 12/11
40/2 40/3 40/10
kilos [1] 8/11
kind [9] 8/3 9/7 10/1
19/9 20/4 20/21 32/22
40/25 43/1
knew [3] 4/15 30/4

knocked [1] 41/20
know [61]
known [2] 29/3 29/9
knows [2] 29/17
32/14

**L**

laid [2] 6/17 13/11
large [1] 36/12
late [1] 32/23
Lauderdale [3] 1/8
1/21 1/25
law [8] 13/4 14/16
14/18 14/19 24/6 37/7
39/23 44/17
lawyers [4] 2/21 11/7
39/3 46/19
learn [1] 22/15
leave [1] 44/20
led [1] 15/10
legal [1] 10/7
length [1] 31/3
lethal [2] 11/24 15/8
level [17] 4/24 5/1 5/2
5/3 5/16 16/5 24/15
32/16 33/2 33/10 34/4
34/23 35/19 35/20
37/6 40/14 42/7
levels [1] 4/25
license [1] 28/6
life [5] 14/23 17/23
33/9 34/20 41/17
limited [2] 8/18 10/23
Literally [1] 31/25
little [21] 6/6 18/14
18/15 19/18 20/17
21/23 22/19 23/8
23/20 32/17 33/6 34/8
36/1 36/4 37/9 38/7
38/14 41/18 42/24
43/8 43/9
live [1] 7/14
lives [1] 20/20
living [1] 34/19
long [1] 4/16
look [14] 9/8 19/17
20/7 20/8 22/11 25/19
34/11 34/17 39/11
39/19 40/10 40/21
41/14 41/17
looked [2] 20/16 43/4
looking [4] 10/1 16/5
17/7 20/6
looks [4] 4/8 19/18
20/18
losing [1] 33/24
lost [1] 27/12
lot [5] 2/21 15/25
22/23 25/11 46/4
louder [1] 21/10
love [1] 19/23
loving [2] 19/10
19/17

**L**

low [1] 44/21
luck [2] 41/21 46/18

**M**

main [1] 4/4
maintained [1] 13/13
making [7] 12/17
15/16 19/12 19/22
20/22 34/20 37/20
mama [1] 22/22
man [20] 13/10 19/9
19/10 19/10 19/16
19/20 19/20 20/6 20/6
20/7 20/19 20/23 31/5
32/1 41/17 41/19
41/23 41/25 42/2
42/16
mandatory [2] 17/24
43/21
manner [1] 44/15
manufacturing [1]
31/18
market [1] 31/4
mass [1] 12/11
math [1] 30/15
matter [2] 46/15 47/5
maximum [1] 17/23
mean [9] 29/17 37/21
39/9 40/3 40/11 41/6
41/7 42/12 45/4
means [2] 2/20 44/21
meant [1] 21/14
measure [1] 42/16
mechanism [1] 24/9
meet [1] 32/20
member [2] 15/1
18/18
members [3] 18/12
20/8 41/25
memorandum [1]
7/13
memory's [1] 25/11
mentioned [5] 8/20
10/16 17/12 23/24
45/19
Merit [1] 47/2
met [3] 24/19 33/1
34/7
Miami [1] 1/19
MICHAEL [3] 1/20
2/9 2/13
microphone [1] 21/6
middle [3] 9/14 32/21
38/6
milligrams [2] 12/7
12/12
mindful [1] 20/13
minimum [2] 17/24
34/15
minnow [1] 31/22
misdemeanor [1]
28/5

misdemeanors [1]
28/4
missed [1] 3/4
missing [1] 3/10
MITCHELL [2] 1/18
2/8
mitigate [1] 40/14
mix [1] 14/3
mixtures [4] 12/3
12/5 25/12 31/1
mom [1] 22/21
money [4] 12/17
15/17 27/2 32/6
MONIQUE [2] 1/17
2/7
month [1] 8/7
months [15] 5/5 5/5
5/17 8/7 12/25 15/21
16/21 31/23 34/3
34/22 40/22 42/5 42/6
43/15 44/7
months' [2] 8/8 11/18
Moore [1] 39/5
morning [1] 30/13
mother [3] 29/5 29/6
41/9 41/15
mother's [1] 41/20
motion [5] 3/16 3/17
3/18 3/20 3/21
motions [2] 6/11
10/14
move [2] 21/6 37/22
moves [1] 45/9
Mr [2] 29/18 37/11
Mr. [52]
Mr. Catis [21] 2/14
2/19 4/4 5/19 6/18
6/23 6/25 7/3 9/6
14/25 16/3 18/19 21/4
30/21 37/24 43/7
43/11 44/14 44/17
46/2 46/9
Mr. Catis' [3] 5/2
8/21 46/1
Mr. Gallagher [1]
29/19
Mr. Weinstein [27]
3/1 3/8 3/25 4/11 5/10
6/10 9/5 9/10 10/9
11/5 15/24 15/25
17/11 18/5 18/9 29/1
37/15 37/24 38/15
40/16 41/23 42/7
43/10 44/13 44/22
45/13 46/7
Ms [3] 5/9 6/17 37/12
Ms. [18] 3/17 3/15
3/22 4/19 5/24 6/3
11/10 12/2 15/23 18/8
18/23 29/25 36/9 37/1
39/7 40/6 42/20 43/8
Ms. Botero [14] 3/7
3/22 4/19 6/3 11/10
15/23 18/8 29/25 36/9

43/8
Ms. Eubanks [1]
18/23
Ms. Hill [3] 3/15 5/24
12/2
multiple [4] 13/10
30/19 31/7 37/5
murder [1] 12/11

**N**

name [1] 7/20 19/2
19/4
named [1] 31/5
names [8] 31/7 31/11
31/11 31/12 32/7 32/9
32/10 36/10
narcotics [1] 12/21
narrow [1] 8/19
nature [1] 11/21
12/13 12/23 14/7
naught [2] 33/22
39/10
nearly [1] 29/4
need [10] 3/3 3/9
4/17 9/9 15/3 15/4
19/2 29/21 30/12
46/16
needed [6] 7/11 8/23
10/10 26/4 34/21
35/11
needs [5] 15/18
29/21 34/17 36/14
40/25
neighborhood [3]
16/19 17/3 38/10
nephews [1] 19/18
nervous [1] 21/24
nest [1] 37/16
network [1] 37/17
never [4] 8/16 8/16
24/11 34/18
Nice [2] 2/11 2/18
niece [2] 22/21 41/16
niece's [2] 41/22
46/16
nieces [1] 20/18
nitazene [1] 31/17
note [1] 45/11
noted [1] 44/3
notes [2] 30/23 36/18
notice [2] 44/18 45/4
number [8] 7/6 7/22
8/11 9/19 39/14 40/4
42/23 42/24
NW [1] 1/19

**O**

object [1] 44/14
objection [1] 6/13
objections [2] 4/20
5/10
obstreperous [1]
30/5

38/10 38/17
obtaining [1] 7/25
obviously [2] 3/9
10/9
occasions [1] 19/11
ocean [1] 31/22
odd [1] 31/23
offended [1] 38/25
offense [12] 4/24 5/1
5/1 5/3 5/15 11/21
12/14 12/24 13/25
14/4 14/16 16/5
offer [1] 32/19
offering [1] 32/17
office [3] 29/18 30/20
43/19
Officers [1] 30/19
Official [1] 1/24
oh [3] 11/8 21/11
38/25
okay [25] 2/2 2/18
3/7 3/24 4/3 4/19 5/9
5/19 5/24 6/2 9/12
10/23 11/10 16/25
17/10 18/5 18/8 18/20
19/3 19/4 22/2 28/25
45/11 45/23 46/14
old [4] 20/15 31/5
41/18 41/20
older [1] 34/1
once [1] 42/17
ones [1] 9/10
online [1] 11/1
open [1] 41/1
operating [1] 29/22
operation [2] 7/17
26/5
opioid [1] 32/5
opioids [4] 6/21 14/2
37/1 37/3
opportunity [2] 2/23
4/10 6/12
opposite [1] 39/16
order [10] 2/1 3/13
12/18 18/12 18/13
32/3 43/24 44/9 44/10
44/12
ordering [1] 32/3
originally [1] 27/6
ounces [1] 31/16
outlined [2] 7/21 45/1
outstanding [2]
35/21 44/22
overdose [1] 12/7
overdosing [1] 15/10
owns [1] 19/21

**P**

p.m [3] 1/9 30/14
46/23
package [2] 14/8
14/13
packages [1] 7/9

pages [2] 4/6 4/24
painting [1] 12/22
paper [1] 9/5
paragraph [5] 9/20
10/16 12/5 41/14
44/23
paragraphs [4] 4/25
28/21 43/23 46/8
parcel [1] 38/11
parent [1] 19/19
part [6] 6/10 7/17
10/8 26/5 43/22 44/3
particular [1] 24/20
parties [1] 43/3
passing [1] 13/3
pauperis [1] 44/21
pay [3] 11/1 43/12
44/20
peace [1] 28/8
penalty [1] 17/5
penny [1] 33/22
37/15
people [9] 17/6 31/7
31/9 31/13 34/5 34/14
39/11 40/19 46/4
percent [24] 8/5 8/6
8/9 8/24 16/18 19/25
25/21 29/15 30/2
32/18 32/20 32/25
33/11 34/13 34/13
35/25 36/6 36/15 37/8
42/6 42/8 42/9 42/10
42/11
perfect [1] 4/2
permissible [1] 44/2
person [3] 12/7 35/5
43/18
personally [3] 17/4
29/9 45/21
perspective [1] 3/4
pertains [2] 15/22
38/19
phone [8] 26/10
26/14 30/7 30/9 30/25
31/8 31/10 31/25
pill [1] 15/11
pills [1] 23/22
pinnacle [1] 14/19
pipeline [1] 39/25
place [3] 11/17 22/14
46/3
placed [2] 8/4 43/16
placement [3] 45/14
45/17 45/24
Plaintiff [1] 1/5
Plantation [1] 30/18
plays [1] 20/23
plea [9] 3/11 3/12
13/23 16/2 24/17
40/14 41/5 44/24 45/1
plead [2] 13/17 35/18
please [1] 29/11
plenty [1] 11/7

**P**

plus [2]  40/22 40/22
point [7]  2/24 15/2
35/23 35/23 36/15
41/17 44/25
pointed [1]  40/6
points [3]  3/4 13/5
16/6
police [2]  24/6 30/19
pops [1]  31/5
position [1]  22/15
possession [4]  13/21
17/21 17/21 38/16
possible [3]  24/8
45/17 45/25
postal [3]  14/8 14/9
14/13
potential [2]  7/14
22/12
potentially [2]  8/12
39/21
preamble [1]  43/2
precursor [1]  6/20
preliminary [3]  3/13
12/18 44/9
preparation [1]  33/1
prepared [3]  3/15
21/24 33/10
present [4]  3/15
18/14 18/15 21/5
presentation [2]
18/16 43/1
presentence [13]
3/14 4/5 4/21 5/11
5/25 6/18 13/3 13/12
41/15 43/4 43/22 44/3
46/8
press [1]  10/17
pressing [1]  15/11
pretty [3]  9/20 20/3
23/25
previous [4]  9/10
17/16 18/3 45/21
previously [1]  11/6
primary [1]  7/17
prior [1]  40/18
prison [14]  5/17 22/4
22/7 22/16 23/2 27/22
33/9 33/24 34/6 34/15
35/12 36/7 36/23 37/3
prisoner [1]  30/16
Prisons [2]  43/14
46/3
probably [4]  16/19
20/1 21/7 33/8
probation [1]  43/19
problem [2]  23/10
27/22
proceed [1]  11/12
proceedings [3]  1/12
46/23 47/4
productive [1]  15/1
professionally [1]

proffer [2]  3/12 11/23
promote [1]  14/15
pronounced [1]
44/15
property [1]  44/11
prosecution [1]  7/13
prosecutor [3]  23/23
29/20 31/20
protect [2]  15/5
36/24
protected [1]  15/18
protecting [2]  15/3
36/20
protonitazene [5]
7/25 14/14 32/13 38/1
38/9
provide [2]  8/16
14/16
provided [1]  14/24
provision [1]  16/11
provisions [1]  5/5
PSI [5]  11/22 12/19
28/22 38/12 45/19
public [4]  15/5 15/18
36/20 36/24
pull [1]  29/18
pulling [1]  30/23
punish [2]  39/15
39/17
punishment [1]
14/16
purpose [1]  12/17
purposes [2]  7/5
15/16
pursuant [1]  3/21
push [1]  42/17
put [6]  6/7 7/13 15/13
16/7 31/12 32/10
puts [1]  5/4

**Q**

quantities [1]  11/24
question [5]  11/12
11/14 17/15 17/16
18/1
questions [13]  5/22
9/2 11/12 15/24 21/25
25/12 25/16 26/13
28/18 28/19 28/21
30/9 30/17
quite [2]  39/5 42/14
42/25

**R**

RAAG [1]  1/13
raised [1]  37/24
raising [1]  39/22
range [4]  5/5 5/16
5/22 16/8
rare [1]  43/1
RDAP [6]  33/7 45/20
45/22 46/6 46/7 46/10
reached [2]  14/18

read [6]  33/13 33/17
35/14 39/1 39/4 42/22
readily [1]  35/6
reading [1]  11/22
reads [1]  37/20
ready [1]  29/11
real [2]  12/21 37/6
reality [1]  37/17
really [17]  8/18 9/6
10/2 10/23 12/22
17/16 31/1 32/18
32/25 36/4 36/6 38/8
39/10 40/12 41/11
42/2 42/15
Realtime [1]  47/3
reason [3]  6/10 10/8
34/25
reasonable [1]  36/17
reasons [4]  8/2 8/10
15/20 39/20
received [4]  13/18
16/17 16/18 33/14
receiving [3]  13/22
38/9 38/13
recognize [2]  29/25
36/12 41/13
recommend [1]
45/16
recommendation [2]
45/20 45/24
recommending [1]
46/7
recommends [1]
11/18
record [4]  2/2 31/12
32/11 47/4
recorder [1]  29/19
redirect [1]  14/25
reduction [7]  3/16
3/21 8/5 8/7 8/25
38/19 42/6
refer [1]  9/19
reference [1]  43/24
referenced [1]  43/22
reflect [1]  14/20
15/17
reflected [2]  12/5
14/8
reflective [1]  38/8
regard [8]  4/23 5/14
15/14 15/15 26/8
35/24 45/23 46/6
regarding [1]  6/11
Registered [1]  47/2
regular [1]  12/22
relates [1]  11/19
release [5]  43/16
43/17 43/18 43/20
44/8
released [1]  43/19
rely [1]  4/5
remanning [1]  45/9
remarkable [2]  40/4

remember [5]  22/3
22/6 23/13 24/21 41/5
remotely [1]  39/8
report [13]  3/14 4/5
4/21 5/12 5/25 6/18
13/12 41/15 43/4
43/18 43/23 44/3 46/8
reporter [1]  1/23 1/24
7/5 47/2 47/3
represent [1]  13/24
representatives [2]
6/23 7/9
represented [2]
23/11 45/22
request [1]  45/16
required [1]  17/24
requirement [1]  44/1
requires [1]  14/4
residence [1]  13/15
respect [4]  14/15
32/1 33/12 41/22
respectfully [2]  36/8
36/9
responsibility [3]  5/3
21/13 21/18
rest [3]  17/5 38/18
38/21
restitution [1]  44/2
restriction [1]  44/1
review [1]  4/10
reviewed [2]  4/1 43/3
right [41]  2/18 3/7 4/4
4/19 5/24 11/4 15/7
18/8 18/21 19/15 22/6
22/10 22/18 23/1 23/5
23/15 23/23 24/5
24/11 24/14 25/10
25/15 25/18 25/24
26/3 26/7 26/11 26/20
27/8 27/12 27/21 28/3
28/16 28/25 35/2 39/3
39/17 44/10 44/17
45/23 46/7
RMR [2]  1/23 47/9
role [1]  20/24
rolls [1]  15/5
roughly [1]  33/6 33/6
34/7

**S**

safety [2]  15/14
15/15
sales [3]  6/22 7/8
12/20
salt [2]  40/7 40/9
sat [2]  30/11 30/12
saw [3]  12/18 14/12
36/11
saying [9]  10/23
12/10 33/17 35/10
35/17 38/1 38/6 39/15
41/25
score [1]  5/20

scoring [1]  42/5
SE [1]  1/21
search [2]  10/18
10/19 13/15 44/2
searched [2]  24/6
24/7
second [3]  10/15
13/1 25/20
secondly [1]  22/18
45/18
secreting [1]  12/20
secretly [1]  14/2
secure [1]  40/18
secured [2]  18/6
42/10
see [15]  2/11 2/18
9/18 13/3 14/11 19/20
19/20 19/25 20/6
31/23 35/7 35/8 35/8
35/8 38/11
seeing [1]  21/17
seen [4]  34/4 42/8
42/10 42/11
seizures [1]  11/25
self [2]  24/8 44/1
self-defense [1]  24/8
self-employment [1]
44/1
selling [1]  32/8
send [1]  14/1
sending [1]  6/20
Senior [1]  2/3
sense [1]  14/1
sentence [31]  2/22
3/17 3/21 6/4 6/9 8/8
8/25 11/18 12/25
13/20 13/24 14/5
14/15 14/20 15/17
15/21 16/23 17/2 17/8
17/23 32/22 34/16
40/13 40/15 41/11
44/7 44/13 44/15
44/18 45/2 46/15
sentences [3]  14/24
37/5 40/20
sentencing [6]  1/12
2/4 2/19 5/20 39/4
43/24
separate [2]  6/11
17/10
serious [3]  12/16
14/4 14/4
seriousness [1]
13/25
serve [2]  33/8 35/12
set [1]  3/9
seven [2]  17/13
40/22
severely [1]  13/6
severity [1]  19/7
ship [1]  35/6
shipping [1]  31/19
short [1]  34/14

Case 0:23-cr-60116-AHS Document 159 Entered on FLSD Docket 01/03/2025 Page 54 of 55

**S**

shove [1] 42/17
show [2] 14/7 27/9
showing [2] 4/24
19/23
sic [1] 18/23
side [1] 18/16
sides [1] 39/4
significant [3] 11/24
12/15 35/12
significantly [1]
38/12
simple [1] 30/15
SINGHAL [3] 1/2
1/13 39/6
sir [34] 3/6 22/5 22/9
22/17 22/25 23/4
23/14 23/17 24/4
24/10 24/13 24/18
24/22 24/25 25/2 25/6
25/9 25/14 25/17 26/2
26/6 26/9 26/12 26/15
26/19 26/22 27/1 27/5
27/11 27/14 27/16
27/18 27/20 27/23
sister [1] 22/21
sit [4] 29/18 32/18
40/25 41/4
sitting [2] 21/8 30/17
situation [2] 19/14
29/4
situations [2] 13/11
28/23
size [1] 40/9
small [3] 34/23 34/23
40/6
society [2] 15/1
21/22
sold [1] 8/1
solely [1] 12/16
some-odd-months
[1] 31/23
somebody [2] 40/7
40/9
son [1] 42/1
sophisticated [1]
35/3
sophisticatedly [1]
32/2
sorry [7] 3/17 19/13
19/14 21/14 21/15
21/16 21/20
sort [1] 28/4
sought [1] 16/12
sound [1] 38/15
sounds [1] 18/22
South [5] 8/1 8/18
12/15 38/6 45/25
South Florida [1]
8/18
SOUTHERN [3] 1/1
9/16 45/17
speak [11] 4/13 6/12
19/8 20/5 21/10 29/23
35/5
speaking [2] 7/21
24/24
special [5] 2/9 43/25
44/2 44/5 44/8
specific [3] 5/1 7/8
28/19
specifically [2] 14/21
43/23
spit [1] 33/4
spoke [2] 30/9 31/7
SR [1] 1/7
stabbed [1] 29/6
stabbing [1] 42/1
standard [1] 43/21
standing [1] 21/8
stands [1] 19/24
start [5] 6/6 6/18 29/2
29/9 34/2
started [1] 6/19
state [2] 29/19 41/24
stated [1] 46/9
statement [5] 2/24
16/3 41/16 41/22
46/17
statements [1] 43/3
STATES [9] 1/1 1/4
1/18 2/3 2/8 6/21
39/16 43/5 44/6
stating [1] 19/7
statutory [1] 16/11
storage [1] 30/7
Store [1] 32/9
stored [1] 14/11
straight [2] 40/25
41/4
street [4] 1/19 1/21
8/1 15/14
streets [2] 12/14 15/4
34/19
strong [2] 19/16 36/3
strongest [1] 12/4
struggled [1] 23/6
study [1] 22/15
stuff [1] 32/3
substance [1] 12/4
substances [3] 8/13
12/1 12/3
substantial [3] 6/15
7/4 18/6
substantially [1]
16/22
sufficient [1] 37/4
suggesting [4] 39/8
39/9 42/18 42/21
suggestion [1] 10/2
suggests [1] 9/6
Suite [2] 1/19 1/21
superseded [1]
17/18
supervised [3] 43/17
43/20 44/8
supervision [1]
43/21
supplement [1] 9/24
support [7] 19/25
21/1 22/20 35/9 46/9
46/15 46/16
supporting [1] 22/24
sure [12] 3/3 3/25 9/3
19/12 19/22 19/23
21/3 21/25 29/13
36/18 40/17 45/18
swallowing [1] 32/13
sympathy [1] 21/16
synthetic [4] 6/20
8/15 14/2 32/4
system [2] 14/17
14/25

**T**

tacked [1] 40/20
take [10] 8/7 19/3
19/21 21/13 24/17
27/9 32/24 33/16 34/8
45/1
taken [1] 37/16
takes [1] 12/12
talk [11] 4/14 13/1
19/3 23/8 24/14 27/2
30/3 30/12 32/15
33/20 41/23
talked [5] 11/16
28/12 31/2 31/4 31/4
talking [2] 31/20 33/1
tape [1] 29/18
Task [1] 30/19
teeth [1] 41/21
telephone [1] 6/22
tell [14] 3/2 3/8 9/24
10/25 10/25 19/19
20/5 22/18 23/19
25/18 29/16 35/9 41/2
44/22
ten [4] 17/24 28/24
41/18 41/20
ten-year [1] 17/24
ten-year-old [2]
41/18 41/20
term [2] 30/1 43/17
terms [13] 4/8 6/14
10/3 10/4 10/7 10/8
12/13 12/14 12/24
16/2 29/21 38/1 45/13
testified [2] 31/6 42/9
testify [1] 28/8
testifying [2] 24/24
24/24
thank [16] 4/2 5/9 6/5
11/9 15/23 18/8 20/25
21/2 28/16 37/10
37/11 46/11 46/13
46/14 46/19 46/21
Thanks [2] 4/3 46/22
thing [6] 8/13 16/21
16/22 23/5 28/4 34/17
supplement [1] 9/24
43/21

think [37] 3/22 16/20
16/23 17/1 17/15
18/16 21/7 21/24
22/10 22/14 23/25
27/21 28/9 28/18 29/7
29/9 30/12 33/10 34/7
35/4 36/9 36/16 37/3
37/6 37/8 38/15 39/2
39/2 39/3 39/13 40/7
40/16 40/25 41/6
42/13 42/17 46/16
thinking [1] 33/4
third [9] 32/19 33/3
33/5 34/13 36/5 36/6
36/14 36/16 42/20
thought [1] 36/6
thoughts [2] 6/4
45/13
thousands [6] 12/20
27/3 27/3 27/12 27/13
33/23
threatened [1] 41/18
three [5] 5/2 6/11
16/6 43/17 44/7
time [8] 4/17 7/1
8/22 11/25 19/23 21/1
25/5 27/24 31/16 33/6
35/12 36/15 36/23
42/22 44/25 45/8
times [1] 14/18
tiny [1] 31/22
title [2] 9/20 44/11
today [6] 3/15 14/20
19/20 20/15 20/21
40/18
told [3] 9/10 23/18
42/5
total [3] 4/25 5/15
44/7
totaled [1] 12/1
tough [1] 34/2
Toye [1] 23/12
trade [4] 22/4 22/7
22/15 37/4
trafficker [2] 7/24
7/24
trafficking [3] 6/25
8/17 24/2
training [1] 34/18
transcript [2] 1/12
47/4
transfer [1] 30/16
trap [1] 32/6
trial [6] 16/2 16/4
17/6 17/18 24/16
33/16
tried [1] 14/25
tries [1] 15/25
trouble [1] 26/17
Troutman [1] 41/24

**U**

8/4 10/12 19/19 25/23
29/22 32/15 39/2 42/3
46/5
think [37] 3/22 16/20

truly [1] 17/5
truthful [3] 25/2 25/3
25/5
trying [2] 16/1 27/6
turning [1] 9/1
turns [1] 32/4
Twenty [1] 34/22
Twenty-eight [1]
34/22
two [12] 4/8 9/16
10/12 13/5 30/17
30/18 31/13 35/18
39/2 39/21 40/7 40/9
type [2] 15/18 23/22
typically [2] 42/22
42/24
typo [1] 11/9

**U**

U.S [1] 1/14
Uh [1] 16/9
Uh-huh [1] 16/9
Uhm [1] 28/10
unable [1] 44/20
uncle [1] 19/9
unconstitutional [1]
39/24
undercover [2] 7/16
7/17
underestimated [1]
29/15
underrepresents [1]
13/6
underring [1] 27/25
understand [8] 5/19
10/6 10/24 19/7 38/23
39/11 41/7 41/9
understanding [2]
23/1 30/6
understands [1]
40/17
understated [1] 37/8
Understood [4] 3/5
11/15 20/25 37/22
unfortunately [5]
32/6 34/20 35/2 35/7
36/10
unit [1] 30/7
UNITED [9] 1/1 1/4
1/18 2/3 2/8 6/21
39/15 43/5 44/6
unknown [1] 15/9
unpaid [1] 44/2
unsophistication [1]
35/20
untruthful [1] 25/1
upward [1] 16/12
use [4] 23/7 30/1
39/17 45/21

**V**

valuable [1] 31/2
variance [4] 3/17

**variance... [3]**  3/18
6/11 16/12
**variety [1]**  8/10
**vast [1]**  31/22
**versus [4]**  2/3 16/2
39/5 42/13
**violation [1]**  14/19
**violations [1]**  23/16
**violence [6]**  13/11
23/24 23/25 24/3
28/22 34/4
**violent [5]**  13/9 14/7
27/25 34/5 34/6
**vital [1]**  20/23
**vocational [2]**  34/18
36/13
**volatile [1]**  29/5

# W

**wacked [1]**  31/23
**waive [1]**  27/8
**waiver [1]**  44/25
**walk [2]**  35/22 42/23
**want [18]**  2/23 3/1
6/7 10/13 18/11 19/8
19/16 20/4 20/9 21/25
28/8 31/12 31/18
31/23 32/10 33/21
35/10 46/14
**wanted [9]**  7/1 19/6
19/8 20/21 22/7 24/17
27/9 38/14 38/21
**wanting [1]**  3/25
**warrant [3]**  10/18
10/19 36/3
**way [6]**  11/8 14/25
25/1 28/10 34/5 34/20
**ways [4]**  11/2 14/24
18/14 29/7
**we've [1]**  41/7
**week [1]**  8/12
**weigh [1]**  42/2
**weight [2]**  40/3 40/11
**WEINSTEIN [30]**
1/20 2/14 3/1 3/8 3/25
4/11 5/10 6/10 9/5
9/10 10/9 11/5 15/24
15/25 17/11 18/5 18/9
29/1 37/11 37/15
37/24 38/15 40/16
41/23 42/7 43/10
44/13 44/22 45/13
46/7
**well [20]**  3/14 3/20
6/17 7/9 13/14 16/13
19/8 20/18 20/25 23/6
23/25 28/11 33/12
35/14 36/22 37/20
41/3 42/10 45/7 46/9
**went [1]**  5/15
**WhatsApp [2]**  32/3
35/5

**willing [5]**  8/22 22/8
22/14 27/9 31/11
**wish [2]**  21/21 46/17
**wishes [1]**  18/18
**witness [4]**  7/11 7/14
8/3 8/22
**witnesses [1]**  18/15
**word [1]**  38/24
**work [3]**  19/21 22/8
46/20
**worked [2]**  15/2 32/9
**worker [3]**  14/8 14/9
14/13
**works [1]**  42/25
**worse [2]**  39/16
39/18
**wrap [1]**  18/19
**written [1]**  5/25

# Y

**year [6]**  13/19 17/19
17/24 30/11 41/18
41/20
**years [17]**  16/11
16/14 16/24 17/3
17/13 18/4 20/15 23/2
28/1 28/2 28/24 29/4
33/3 34/7 40/22 40/23
43/17
**years' [1]**  44/7
**younger [2]**  20/12
20/12

# Z

**zero [1]**  16/11